In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 08-3809 & 08-3811

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEWAYNE HALL and CALVIN KEY,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:01-CR-98—**James T. Moody**, *Judge.*

ARGUED JANUARY 15, 2010—DECIDED APRIL 9, 2010

Before WOOD, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* DeWayne Hall and Calvin Key appeal the district court's denial of their motions for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) based on the retroactive crack-cocaine amendments to the Sentencing Guidelines. We reject their arguments and affirm. The district court was well within its discretion in finding each defendant responsible for distributing over 4.5 kilograms of crack cocaine, making them

ineligible for a sentence reduction under the amended guidelines. The court's findings were not inconsistent with its original sentencing findings and were therefore properly within the scope of a § 3582(c)(2) proceeding.

## I. Background

Hall and Key were members of the Concord Affiliated street gang in Gary, Indiana, and their convictions stem from an 18-person, 23-count indictment for conspiracy and distribution of crack cocaine returned by a grand jury in 2001. In 2002 both defendants entered into plea agreements with the government. Hall pleaded guilty to the conspiracy count, 18 U.S.C. § 846, and Key pleaded guilty to distributing crack cocaine in violation of 21 U.S.C. § 841. At their sentencing hearings, both defendants started with a base offense level of 38—the highest under the applicable guideline—based on stipulations in their plea agreements that they were responsible for more than 1.5 kilograms of crack cocaine. After various downward adjustments, both defendants were sentenced at the low end of their resulting guidelines ranges—135 months for Hall and 188 months for Key.

In 2007 the United States Sentencing Commission amended the guidelines for crack-cocaine offenses to ameliorate the disparity between crack- and powder-cocaine sentences. U.S.S.G. app. C, amend. 706. The amendment effectively lowered the penalties for most crack offenses by two levels. *Id.* The commission made this reduction retroactive pursuant to 28 U.S.C. § 994(u). *See* U.S.S.G. § 1B1.10. The retroactive amendment

increased the drug-quantity threshold for the top base offense level for crack offenses from 1.5 kilograms to 4.5 kilograms. *Id.* § 2D1.1(c)(2). Under the new guideline, a defendant responsible for distributing between 1.5 kilograms and 4.5 kilograms of crack cocaine starts with a base offense level of 36, not 38. That meant that if Hall and Key were responsible for less than 4.5 kilograms of crack, they would have been entitled to an additional two-level reduction in their offense level.

In light of this amendment, Hall and Key moved to reduce their sentences pursuant to § 3582(c)(2), which permits "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to file a motion for a reduced sentence. They argued that although they had admitted in their plea agreements that they were responsible for in excess of 1.5 kilograms of crack cocaine—the old threshold for a base offense level of 38—they never admitted responsibility for the new threshold drug quantity of 4.5 kilograms.

Hall's original presentence investigation report ("PSR") had established that he distributed drugs for the Concord Affiliated gang from at least 1996 to 2001. The report also described two crack sales Hall made to a confidential informant in 2000, and a 2001 incident in which federal agents stopped a car he was driving and confiscated a plastic bag containing eight small baggies of crack cocaine. Moreover, Hall admitted that the Concord Affiliated gang regularly supplied him with crack cocaine and that he would sell the drugs from a location

known as "the hill." He also admitted to selling crack
cocaine to the confidential informant on the dates men-
tioned in the PSR. Finally, and most importantly for
the present appeal, Hall's PSR reported that a cocon-
spirator "supplied [Concord Affiliated] with at least 16.91
kilograms of crack cocaine, which was eventually distrib-
uted to addicts through street level [Concord Afilliated]
dealers, like DeWayne Hall." Accordingly, the PSR con-
cluded Hall conspired to distribute well in excess of 1.5
kilograms of crack cocaine—and indeed far more than
the amended 4.5-kilogram crack-cocaine threshold.

Key's PSR noted that he was a "major player" in the
Concord Affiliated street gang, sold crack on "the hill"
from 1995 to 2000, and bought drugs on a weekly basis
from another gang member named Seantai Suggs. Key's
PSR also noted that he had on two occasions sold crack
cocaine to undercover agents. In the section detailing
Key's acceptance of responsibility, the PSR noted that
Key had admitted selling crack to undercover agents,
albeit on different dates than the two occasions noted in
the report. The PSR totaled the drug quantities from
the various controlled buys and seizures involving Key,
added amounts attributable to relevant conduct, and
concluded that Key was responsible for the distribution
of "at least 17.1 kilograms of crack cocaine."

Before his sentencing hearing, Key lodged three objec-
tions to his PSR. He objected to the assertion that he was
a "major player" in the gang, that he bought drugs
from Suggs on a weekly basis, and that he was respon-
sible for at least 17.1 kilograms of crack cocaine. At sen-

tencing, however, Key withdrew these objections after the court indicated that their resolution would have no effect on the guidelines range.[1] After confirming that Key personally consented to the withdrawal of these objections, the court adopted the factual statements of the PSR "as to which there has been absolutely no objection."

---

[1] The following colloquy between Key, his attorney, and the court occurred in relation to Key's objection to the PSR's finding that he was responsible for distributing 17.1 kilograms of crack cocaine:

> THE COURT: And that's the statement that the defendant for sentencing purposes is responsible for 17.1 kilograms of crack cocaine. He's agreed—I mean, it doesn't affect the sentencing guidelines because he's at a guideline 40 because he admitted responsibility for 1.5 kilos of crack cocaine within Paragraph 9G2 of this plea agreement.

> [DEFENSE COUNSEL]: I would withdraw that objection because looking at the plea agreement, the plea agreement states that the defendant agrees that he is responsible for at least 1.5 kilograms, which does not exclude more than that, up to and including 17.1 kilograms. So I would withdraw that.

> THE COURT: Mr. Key, do you hear what your lawyer just said?

> THE DEFENDANT: Yes.

> THE COURT: Do you disagree or agree with him?

> THE DEFENDANT: Agree.

> THE COURT: Okay. All right. Then I will show the defendant's objection to Paragraph 18 [sic] on page five of the pre-sentence report is now withdrawn.

After receiving the § 3582(c)(2) motions, the district court ordered briefing and requested an addendum from the United States Probation Office regarding the application of the retroactive crack amendment to the defendants' sentences. The Probation Office reported that the amendment had no impact on either defendant's sentence because they were responsible for more than 4.5 kilograms of crack cocaine. More specifically, the addendum referred the court to the amounts attributed to the defendants in their original PSRs: 16.9 kilograms of crack for Hall and 17.1 kilograms of crack for Key.

In separate rulings the district court denied the defendants' motions. The court noted that the Probation Office had concluded in its addendum that Hall and Key were responsible for distribution of more than 4.5 kilograms of crack and each defendant was therefore ineligible for a sentence reduction. Referring back to the defendants' original sentencing hearings, the judge noted that he had earlier adopted the PSR's proposed factual findings—17.1 kilograms of crack cocaine for Key and 16.9 kilograms of crack cocaine for Hall—amounts well above the 4.5-kilogram limit for a sentence reduction. The judge also rejected Key's argument that he had preserved his objection to the 17.1-kilogram drug-quantity finding in his original sentencing. Both defendants appealed.

## II. Discussion

The district court has substantial discretion in adjudicating sentence-reduction motions under § 3582(c)(2), *see*

*United States v. Young*, 555 F.3d 611, 612 (7th Cir. 2009), and our review is deferential, *see United States v. Hall*, 582 F.3d 816, 817 (7th Cir. 2009) ("We review the trial judge's determination of a § 3582(c)(2) motion . . . for abuse of discretion."). Hall and Key argue that the district court abused its discretion by adopting unsupported factual findings. They acknowledge responsibility for more than 1.5 kilograms of crack but *not* more than 4.5 kilograms and argue that finding them responsible for more than 4.5 kilograms is inconsistent with the court's original sentencing findings.

We have previously held that in deciding a sentence-reduction motion pursuant to § 3582(c), the district court may not make factual findings that are inconsistent with those made during the original sentencing. *United States v. Woods*, 581 F.3d 531, 538 (7th Cir. 2009). But nothing prevents the court from making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination. Indeed, new findings may be necessary where, as here, the retroactive amendment to the guidelines altered the relevant drug-quantity thresholds for determining the defendant's base offense level. *See Hall*, 582 F.3d at 819 (new factual finding as to drug quantity necessary to determine whether retroactive crack amendment was applicable). Accordingly, in ruling on a § 3582(c)(2) motion, the district court may consider the record as a whole, including any addenda to the PSR. *Woods*, 581 F.3d at 538. That's what the district court did here, and there is no inconsistency between the court's original sentencing findings and its § 3582(c)(2) findings.

Hall contends that when his original PSR referred to a drug-quantity total of 16.9 kilograms of crack, it was not suggesting he was individually responsible for that quantity. Hall's PSR reported that a source had "supplied [Concord Affiliated] with at least 16.91 kilograms of crack cocaine, which was eventually distributed to addicts through street level [Concord Affiliated] dealers, like DeWayne Hall." True, this statement was imprecise. But its meaning is inescapable: The drug conspiracy was responsible for distributing more than 16 kilograms of crack cocaine, and Hall was responsible for that amount by virtue of his participation in that conspiracy. He admitted the gang supplied him with drugs and that he resold those drugs on "the hill" and at other locations in Gary for at least six years. Accordingly, under the rubric of relevant conduct, Hall is responsible for the drug quantities sold in furtherance of the conspiracy, which in this case eclipsed 16.9 kilograms of crack cocaine. *See United States v. Easter*, 553 F.3d 519, 523 (7th Cir. 2009) ("In a drug conspiracy, the amount of drugs attributable to any one codefendant as 'relevant conduct' for guidelines purposes is limited to the reasonably foreseeable transactions in furtherance of that codefendant's 'jointly undertaken criminal activity . . . .'" (quoting U.S.S.G. § 1B1.3(a)(1)(B))). Any doubt about the court's 16.9-kilogram finding should have been extinguished by the addendum to the PSR, which again concluded that Hall was responsible for that amount. The district court did not abuse its discretion in denying Hall's motion for a sentence reduction under § 3582(c)(2).

We also reject Key's arguments for a sentence reduction. Key expends considerable energy—needlessly so—

in arguing that his objection to the 17.1-kilogram drug-quantity finding at his original sentencing hearing was not waived. Key contends that he only withdrew his objection when the court made clear that it would not affect his sentence. To withdraw an objection under these circumstances, Key insists, should not be treated as a waiver; he claims he had no strategic basis to withdraw the objection but was simply responding to the court's determination that it would make no difference in the guidelines analysis. But we do not see how this matters. Regardless of whether Key's on-the-record withdrawal of his original objection should be considered a waiver, nothing prevented the district court from adopting the PSR's proposed 17.1-kilogram finding in connection with the proceedings on Key's § 3582(c)(2) motion. And the court did just that. The court based this finding on the original PSR, which said Key was responsible for the 17.1-kilogram amount, as well as the addendum to the PSR, which confirmed that Key was not entitled to the reduction because the drug quantity attributable to him exceeded the new 4.5-kilogram threshold under the amended guideline.

Key also argues that the judge never actually adopted the 17.1-kilogram figure as a factual finding at his original sentencing, but this is another red herring. Key argues that the 17.1-kilogram finding could not have been adopted because the judge said only that he was adopting those findings "as to which there was absolutely no objection." Because this statement immediately followed the colloquy about Key's drug-quantity objection, Key contends the judge never actually made a

factual finding that he was responsible for the 17.1 kilograms of crack the PSR attributed to him. Even if we were inclined to agree, it would not help Key as much as he would like. Let's assume the court never entered an explicit 17.1-kilogram finding at the original sentencing; the court was required to determine how much crack cocaine Key was responsible for in order to adjudicate his § 3582(c)(2) motion. The district court did so by relying on the figure in the original PSR, which the Probation Office confirmed in its addendum.

Key bears the burden of showing that the PSR was based on inaccurate or unreliable information, *see United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007), and has done nothing in the § 3582(c)(2) proceeding to call into question the Probation Office's calculation of the drug quantity attributable to him. There are certainly some circumstances in which ambiguities in the original PSR may be significant enough that the district court should not rely on it to deny a § 3582(c)(2) motion. For example, in *Hall*—a case involving the same retroactive crack amendment—we held that the district court abused its discretion in denying a motion for a sentence reduction based on a crack-cocaine/powder-cocaine discrepancy in the original PSR. 582 F.3d at 818. While the total drug quantity at issue in *Hall* exceeded the 4.5-kilogram threshold for sentence-reduction eligibility, the original PSR was unclear what proportion of that total was made up of crack cocaine as opposed to powder cocaine. Because a "reasonable reading of the facts could result in a finding that [the defendant's] conduct involved less than 4.5 kg of crack," we

reversed the denial of the defendant's § 3582(c)(2) motion. *Id.*

Here, by contrast, Key has not cast doubt on the original PSR's recommendation that he was responsible for 17.1 kilograms of crack cocaine. It is undisputed that Key participated in a large-scale crack-cocaine operation, and he makes no attempt to refute the substantial evidence arrayed against him: that the FBI recovered crack cocaine from Concord Affiliated gang members on 25 separate occasions; that he sold crack for the gang on "the hill" for six years; that a confidential source saw him buy drugs from Seantai Suggs and that he did so at least once a week; that his sale of 5 grams of crack to a confidential informant was captured by video and audio surveillance; that a confidential informant identified him as a street-level dealer in the gang; and that he told Michael Carter, a codefendant, that Bobby Suggs cooked powder cocaine into crack for him.

Moreover, testimony at the trial of Bobby Suggs, the leader of Concord Affiliated, indicated that Suggs received 7 kilograms of powder cocaine from a supplier and after cooking the powder into crack, gave 6.2 kilograms of crack to street-level dealers, including Key. Testimony at that trial also established that Anthony Evans, another member of the conspiracy, obtained at least 12 kilograms of powder cocaine to be distributed by Concord Affiliated street dealers, which when processed into crack amounts to 10.68 kilograms of crack cocaine. Based on all this evidence, Key's PSR concluded that he was responsible for *at least* 17.1 kilograms of crack

cocaine—far above the 4.5-kilogram limit for eligibility for a sentence reduction. The district court did not abuse its discretion in denying Key's § 3582(c)(2) motion.

AFFIRMED.