In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2303

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCHELLO DUNCAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 200-16—**Wayne R. Andersen**, *Judge.*

ARGUED JANUARY 20, 2011—DECIDED APRIL 22, 2011

Before RIPPLE and HAMILTON, *Circuit Judges,* and
MURPHY, *District Judge.**

MURPHY, *District Judge.* Marchello Duncan appeals
the denial of his motion for a sentence reduction
pursuant to 18 U.S.C. § 3582(c)(2). We affirm. The
district court did not abuse its discretion when it found

---

* The Honorable G. Patrick Murphy of the Southern District
of Illinois, sitting by designation.

that Mr. Duncan was responsible for in excess of 4.5 kilograms of crack cocaine. Accordingly, the district court correctly concluded that Mr. Duncan was ineligible for relief because the retroactive amendment to the Sentencing Guidelines did not lower the sentencing range applicable to him, as is required by § 3582(c)(2).

## I. Background

Beginning in approximately 1999 and continuing until March 2002, Mr. Duncan was a member of a crack trafficking organization operating in Chicago Heights, Illinois. The organization, headed by Troy Lawrence, "sold crack twenty-four hours a day, seven days a week" from the early 1990s until March 2002. *United States v. Seymour*, 519 F.3d 700, 704 (7th Cir. 2008). Federal investigation of the organization spawned a 26-defendant, 40-count indictment, in which Mr. Duncan was charged with conspiracy to possess with intent to distribute more than 50 grams of cocaine base and more than 5 kilograms of cocaine powder; and two counts of distribution of cocaine base within 1000 feet of an elementary school. Mr. Duncan entered into a plea agreement, admitting to violation of 21 U.S.C. §§ 841(a)(1), 860(a), 846, and 18 U.S.C. § 2. According to his plea agreement, Mr. Duncan worked for Lawrence's organization as "security," a lookout for law enforcement, and as a "packman," selling dime bags of crack cocaine to customers. Mr. Duncan was aware of stash locations where large amounts of crack cocaine were held, and he attended meetings with organization members, in-

cluding Troy Lawrence. The plea agreement stated that Mr. Duncan's offense involved more than 1.5 kilograms of cocaine base and that his base offense level was 38, to which the parties agreed.

The presentence investigation report ("PSR") prepared by the United States Probation Office in advance of Mr. Duncan's sentencing also concluded that his base offense level was 38 and that Mr. Duncan was responsible for 137 kilograms of crack cocaine with the following rationale:

> With regard to the instant offense, the defendant worked as both packman and security for the Lawrence Operation from 1999 until his arrest in 2002. The organization using the most conservative estimates, sold approximately 1,000 "dime" bags of crack cocaine per day, with each bag containing .15 grams of crack. Such a calculation results in approximately 150 grams of cocaine sold per day, or approximately 55 kilograms per year. As the defendant's involvement in the organization lasted for at least 2.5 years, and the amount of crack cocaine reasonably foreseeable to the defendant is responsible for at least 137 kilograms of crack cocaine, under the sentencing guidelines. [sic]

From Duncan's base level of 38, he received a 2-level increase for possession of a dangerous weapon during the offense, a 2-level increase because the offense occurred within 1000 feet of an elementary school, and a 3-level reduction for accepting responsibility, resulting in an offense level of 39.

At sentencing on September 7, 2005, Mr. Duncan told the district court that he had read the PSR and discussed it with his attorney. In response to the court's question whether there were "any facts summarizing the offense behavior to which he has pled guilty in the PSI that you wish to challenge," Mr. Duncan's counsel answered "no." The Court responded: "Okay. I will retain the presentence investigation, direct that if appeal is taken, that counsel on appeal be permitted access to it." Based on Mr. Duncan's cooperation, the government, in its U.S.S.G. § 5K1.1 motion, recommended a sentence of 174 months (from a guideline range of 262 to 327 months). Mr. Duncan agreed with that figure for downward departure, and the Court sentenced Mr. Duncan to 174 months.

On May 6, 2009, Mr. Duncan filed a *pro se* motion to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2). The government responded in opposition to that motion, arguing that a § 3582 reduction would not reduce Mr. Duncan's guideline range. The government argued that the district court had adopted the PSR at sentencing, which tagged Mr. Duncan responsible for at least 137 kilograms of crack cocaine. Therefore, under the amended guideline range, Mr. Duncan's base offense level would still be 38. Mr. Duncan (now represented by counsel) argued that the government agreed to and the district court had already granted a § 3582(c)(2) motion for reduction in sentence for one of his co-defendants, Cameron Wilson, and that the Court never made a finding that Mr. Duncan was responsible for more than 4.5 kilograms of crack cocaine. The district court denied Mr. Duncan's motion, stating:

Defendant was sentenced to 174 months imprisonment. The base offense level was 38 under the November 2002 edition of the Sentencing Guidelines Manual. Under the revised guidelines defendant's base offense level remains at a level 38. At the high end, the guidelines previously applied a base offense level 38 to a quantity of crack cocaine of 1.5 kilograms or more. Under the revised guidelines that offense level now only applies to offenses involving 4.5 kilograms or more of crack cocaine. The factual basis underlying defendant's offense shows that he was involved in the drug conspiracy and accountable for the distribution of well in excess of 4.5 kilograms. Therefore there is no basis for a reduction of defendant's sentence because a base offense level 38 applies under both the old and revised guidelines. Therefore defendant's base offense level remains unchanged by the sentencing guidelines amendments. For these reasons, defendant's motion to reduce sentence is denied.

## II. Discussion

The district court has substantial discretion in its determination of whether to modify a sentence under § 3582(c)(2). Section 3582(c)(2) permits a district court to modify a defendant's sentence if that defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582 (c)(2). The Sentencing Commission did lower the sentencing range

for some quantities of crack cocaine with Amendment 706. Post-amendment, responsibility for 1.5 to less-than-4.5 kilograms of crack cocaine merits a base offense level of 36, not 38. U.S.S.G. § 2D1.1(c). The top base offense level of 38 now applies only if the defendant is responsible for 4.5 or more kilograms of crack. Where a defendant was originally sentenced with a base offense level of 38, section 3582(c)(2) relief is only available if less than 4.5 kilograms of crack is attributable to him. *See United States v. Forman,* 553 F.3d 585, 590 (7th Cir. 2009) ("Amendment 706 . . . affects only defendants who are responsible for distributing fewer than 4.5 kilograms of crack cocaine.").

The gist of Mr. Duncan's argument on appeal is that the district court impermissibly made new findings in the § 3582(c)(2) proceeding in order to attribute 4.5 kilograms of crack to him. He claims that the district court did not adopt the PSR at sentencing, so post-sentencing reliance on the PSR's determinations was unfounded. He argues that the district court ascribed crack cocaine amounts to him beyond what was reasonably foreseeable within his role in the greater conspiracy. He also contends that the PSR improperly conflated the amount of crack dealt by the conspiracy at large with the scope of his individual activity (what he was "aware of").

Mr. Duncan argues that § 1B1.10 of the United States Sentencing Commission Guidelines prohibited the district court from making new factual determinations when it considered his § 3582(c)(2) motion. This is simply not the case. While it is true that "district courts

in § 3582(c)(2) proceedings cannot make findings *inconsistent with* that of the original sentencing court," *see United States v. Woods*, 581 F.3d 531, 538 (7th Cir. 2009) (emphasis added), "nothing prevents the court from making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination." *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010).

Here, the district court considered the factual bases underlying Mr. Duncan's offense and concluded that he was accountable for at least 4.5 kilograms of crack cocaine. The record provides more than ample evidence for this finding. The Lawrence enterprise conservatively sold 150 grams of crack a day. That is 4.5 kilograms in just one month, and Mr. Duncan was a member of the organization for over two years.

Mr. Duncan's attempt to distinguish between what he was "aware of" as a conspiracy member and what was "foreseeable to him" is unavailing. He is correct that for sentencing purposes, a defendant "convicted of a drug trafficking conspiracy is liable for the reasonably foreseeable quantity of drugs sold by his or her co-conspirators," *Seymour*, 519 F.3d at 710-11, and that "[r]easonable foreseeability refers to the scope of the agreement that [a defendant] entered into when he joined the conspiracy, not merely the drugs he may have known about," *United States v. Hollins*, 498 F.3d 622, 630 (7th Cir. 2007). More than 4.5 kilograms of crack was foreseeable to Mr. Duncan, and his denial is not plausible. The record is clear that the Lawrence operation

dealt a staggering amount of crack. Mr. Duncan was a member of that organization who served as a crack-salesman, was privy to the stash locations, and was a participant in high-level meetings. The assertion that Mr. Duncan could not foresee that more than 4.5 kilograms were involved is baseless. He is "responsible for the drug quantities sold in furtherance of the conspiracy," and it was well within the discretion of the district court to find that the amount for which Mr. Duncan was responsible exceeded 4.5 kilograms. *Hall,* 600 F.3d at 876.

Further, Mr. Duncan did not object to the PSR at sentencing. The PSR states that Mr. Duncan is responsible for at least 137 kilograms of crack cocaine. At oral argument, Mr. Duncan's counsel contended that an objection at sentencing would have been pointless, as Mr. Duncan had already agreed to an offense level of 38, and because, at the time, 1.5 kilograms was the highest quantity demarcating an increase in base offense level. However, the strategic bases for failing to object to the PSR do not affect the district court's ability to refer to the PSR's analysis on review of Mr. Duncan's § 3582(c)(2) motion. *See Hall,* 600 F.3d at 876 ("Regardless of whether [defendant's] on-the-record withdrawal of his original objection should be considered a waiver, nothing prevented the district court from adopting the PSR's proposed 17.1-kilogram finding in connection with the proceedings on [defendant's] § 3582(c)(2) motion."). Mr. Duncan points out that the PSR is awkwardly worded. However, he cannot show that the district court erred in relying on the PSR's calculation, particularly

since the PSR's calculation is amply supported by the record. *See United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007) ("[I]t is the defendant's burden to show that the PSR is inaccurate or unreliable.").

Mr. Duncan's contention that the district court never adopted the PSR at sentencing does not help him. Responding to an identical argument in *Hall* (where the defendant argued that the district court incorrectly relied on the PSR figure of 17.1 kilograms of crack), we explained: "[T]his is another red herring. . .Even if we were inclined to agree, it would not help [defendant] as much as he would like. Let's assume the court never entered an explicit 17.1-kilogram finding at the original sentencing; the court was required to determine how much crack cocaine [defendant] was responsible for in order to adjudicate his § 3582(c)(2) motion." *Hall,* 600 F.3d at 877.

As for the issue of a codefendant's successful § 3582(c)(2) motion, the distinction here is that the government did, in fact, oppose Mr. Duncan's motion. It is not for this Court to deduce the rationale for the government's inconsistent strategy—it is wholly irrelevant to the district court's disposition of Mr. Duncan's motion. Mr. Duncan participated in a drug conspiracy that sold at least 4.5 kilograms of crack each month. The district court did not abuse its discretion by finding that he was responsible for that amount over the course of his two-plus year participation in the conspiracy.

### III. Conclusion

We therefore AFFIRM the district court's denial of Mr. Duncan's § 3582(c)(2) motion.