SMITH, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s affirmance of the district court’s denial of Benson’s motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). “Because the record is insufficient to determine [Benson’s] eligibility for a sentence reduction,” I would vacate the district court’s order and “remand with instructions for the district court to make additional findings as to the amount of crack cocaine attributable to [Benson] and, based on that finding, determine anew whether [Benson] can or should benefit from Amendment 750.” Adkins, 466 Fed.Appx. at 303-04.
Section 3582(c)(2) of 18 U.S.C. “requires the court to follow the Commission’s instructions in § IB 1.10 to determine the prisoner’s eligibility for a sentence modification and the extent of the reduction authorized.” Dillon, 130 S.Ct. at 2691. Under U.S.S.G. § 1B1.10(b)(1), the district court must “begin by ‘determining] the amended guideline range that would have been applicable to the defendant’ had the relevant amendment been in effect at the time of the initial sentencing.” Id. (alteration in original) (quoting U.S.S.G. § 1B1.10(b)(1)). After calculating the amended Guidelines range, “ § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction ... is warranted in whole or in part under the particular circumstances of the case.” Id. at 2692. But a “court[] generally may ‘not reduce the defendant’s term of imprisonment under 18 U.S.C. § 3582(c)(2) ... to a term that is less than the minimum of the amended guideline range’ produced by the substitution.” Id. at 2691 (second alteration in original) (quoting U.S.S.G. § 1B1.10(b)(2)(A)). The court must also consider the following factors in deciding “whether and to what extent a reduction in sentence is warranted”: “ ‘the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant’s term of imprisonment,’ U.S.S.G. § 1B1.10(b) cmt. n. 1(B)(ii), and ... ‘post-sentencing conduct of the defendant,’ id. at cmt. n. 1(B)(iii).” Burrell, 622 F.3d at 964.
“We review a district court’s decision under § 3582(c)(2) to reduce a sentence and the extent of any reduction for an abuse of discretion.” Id. But “[w]e review de novo the district court’s determination that [Benson] was not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2).” United States v. Browne, 698 F.3d 1042, 1045 (8th Cir.2012).
*710 “[D]rug quantity findings are a predicate to ... eligibility for a sentence modification .... ” Wingo, 429 Fed.Appx. at 551. “[T]he absence of any drug quantity findings means that the district court cannot follow the strictures of the mandatory Guidelines governing § 3582(c)(2) sentence modifications.” Id. at 550 (citing U.S.S.G. § 1B1.10; Dillon, 130 S.Ct. at 2691-92).
Although district courts may not “make findings inconsistent with that of the original sentencing court” in § 3582(e)(2) proceedings, they are not prohibited from “making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination.” United States v. Duncan, 639 F.3d 764, 768 (7th Cir.2011) (quotations and citations omitted) (holding that “[t]he record provide[d] more than ample evidence” to support the district court’s finding that the defendant “was accountable for at least 4.5 kilograms of crack cocaine” based on “the factual bases underlying [the defendant’s] offense” and the defendant’s failure to “object to the PSR at sentencing,” which provided that the defendant was “responsible for at least 137 kilograms of crack cocaine”). “Indeed, new findings are often necessary where ... retroactive amendments have altered the relevant drug-quantity thresholds for determining a defendant’s base offense level.” United States v. Davis, 682 F.3d 596, 612 (7th Cir.2012). When ruling on a defendant’s § 3582(c)(2) motion, “a district court may consider the record as a whole, including the defendant’s motions, the government’s responses, and any addenda to the PSRs explaining the scope of a drug trafficking conspiracy before reaching a conclusion on the drug quantity attributable to a defendant.” Id.
Here, Benson represented in his motion to reduce his sentence that “Amendment 750 (parts A and C only) to the Sentencing Guidelines’ Drug Quantity Table in § 2D 1.1 [was] applicable to [him]” and “that, based on the quantity of drugs, a four-level reduction to Offense Level 32 is appropriate, or, in the alternative, a guideline range of 188-235 months’ imprisonment.” (Emphasis added.) Benson represented that he was “eligible for a reduction of his sentence by retroactive application of Amendment 750 (parts A and C only) pursuant to 18 U.S.C. § 3582(c) and recently amended Policy Statement § 1B1.10 (effective November 1, 2011).” (Emphasis added.) . Following the district court’s denial of his motion, Benson argued in his motion for reconsideration that he “f[ell] within the 500 grams to 839 grams, which is the overlap between the old and new guidelines.” (Emphasis added.) He reasoned that “if the [c]ourt found in 2008 that [he] fell below the 10,000 kilogram marijuana equivalent mark, the [c]ourt was necessarily also making a finding in 2008 that [he] fell within 500 grams, but less than 1.5 kilograms of crack cocaine.”
Under Dillon, the district court was required to determine what Benson’s Guidelines range would have been had Amendment 750 been in effect at his original sentencing. See Dillon, 130 S.Ct. at 2691. This necessarily involves a determination of the amount of cocaine base attributable to Benson. See Wingo, 429 Fed.Appx. at 551. Here, ¶¶ 8, 14, and 19 of the PSR provide that Benson was responsible for 15,325.48 kilograms of marijuana equivalent. At sentencing, although Benson argued that his drug-quantity calculation was 14.000 kilograms of marijuana equivalent, the district court “accepted] the amounts ... set forth in the presentence report.” Because this amount was within 10,000 and 30.000 kilograms of marijuana equivalent, the court calculated a base offense level of 36. Thereafter, in granting Benson’s first § 3582 motion based on Amendment 706, the district court determined that Benson’s *711 “total weight would have fallen below 10,-000 kilograms of marijuana equivalent, and that he was entitled to a 2-point reduction, which made his new base offense level a 34.”
The drug-quantity amount set forth in the PSR, which the district court adopted, failed to break down what amounts of powder cocaine, cocaine base, and marijuana were used in the calculation to determine the marijuana equivalency. The PSR only provides that Benson was “a source of cocaine, crack, and marijuana,” “suppl[ying] large quantities of cocaine to Harold Barbee and varying quantities to others.” He also “supplied crack and marijuana to others.” And, as Benson admitted in his motion for reconsideration, in granting his first, § 3582 motion, the district court never made “a judicial finding ... regarding where and how far below 10,000 kilograms Defendant’s marijuana equivalent fell.”
The record contains evidence from which the district court could determine the amount of cocaine base attributable to Benson. See Duncan, 639 F.3d at 767-68; Davis, 682 F.3d at 612. For example, the court could reconstruct the drug-quantity calculation based upon trial testimony of drug purchases of witnesses, such as Harold Barbee, Keith Dunbar, Anthony Black, Keith Hawkins, and Michael Hutton.
The record does not show whether the district court calculated Benson’s amended Guidelines ranges as if Amendment 750 had been in effect at the time of his original sentencing. See Dillon, 130 S.Ct. at 2691. Such a determination would necessarily involve a drug-quantity finding of how much cocaine base was attributable to Benson. Wingo, 429 Fed.Appx. at 551. Despite Benson’s representation in his motion that he was eligible for a sentence reduction, the district court denied the § 3582(c)(2) motion because Benson “presented no evidence to support a finding that he is responsible for less than 3,000 kilograms of marijuana equivalent.” The district court thus concluded that neither Benson’s “base offense level nor guideline range changed as a result of Amendment 750.” But crediting the government’s representation at the original sentencing that witness testimony establishes the drug-quantity amounts, I cannot infer that “the district court may have felt that it was simply unable to do the ‘obligatory math.’ ” See Hardimgn, 469 Fed.Appx. at 478 (quoting Wingo, 429 Fed.Appx. at 551).
On remand, the district court could find that the record — specifically, witness testimony — sets forth sufficient information to confirm how much cocaine base is attributable to Benson and ultimately whether he is eligible for a sentence reduction. But, it could also conclude that the record is insufficient to establish the amount of cocaine base attributable to the defendant and therefore that it is “unable to do the ‘obligatory math.’ ” Id. (quoting Wingo, 429 Fed.Appx. at 551).
“Because the record is insufficient to determine [Benson’s] eligibility for a sentence reduction,” I would vacate the district court’s order and “remand with instructions- for the district court to make additional findings as to the amount of crack cocaine attributable to [Benson] and, based on that finding, determine anew whether [Benson] can or should benefit from Amendment 750.” Adkins, 466 Fed. Appx. at 303-04.