**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-6293**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MELISSA DARLENE BARRETT,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, Senior District Judge.  (1:18-cr-00025-JPJ-25)

Argued:  January 30, 2025                    Decided:  March 27, 2025

Before NIEMEYER, GREGORY, and HARRIS, Circuit Judges.

Vacated and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Niemeyer and Judge Gregory join.

**ARGUED:**  Erin Margaret Trodden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.  **ON BRIEF:**  Mary E. Maguire, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Christopher R. Kavanaugh, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

While Melissa Barrett was serving a 168-month sentence for federal drug offenses, Amendment 821 to the Sentencing Guidelines took effect. Made retroactive by the Sentencing Commission, Amendment 821 limited the impact of "status points" that had been used to calculate Barrett's original Guideline range. Relying on Amendment 821, Barrett moved the court to reduce her sentence to 120 months.

The government agreed Barrett was eligible for a sentence reduction. But the parties disagreed as to the scope of Amendment 821's retroactive effect. Barrett argued that Amendment 821 affected both her criminal history category and her offense level, leading to a substantial reduction in her Guideline range. The government believed Amendment 821 should be applied retroactively only to Barrett's criminal history category, producing a more modest effect on her sentencing range. The district court sided with the government and accordingly reduced Barrett's sentence to 150 months, rather than the 120 months Barrett had requested.

On appeal, Barrett argues that the district court erred by failing to give full retroactive effect to Amendment 821. We agree, and therefore vacate the district court's judgment and remand for further consideration of Barrett's motion.

**I.**

For context, we begin with a review of the relevant Sentencing Guidelines provisions and Amendment 821. We then describe Melissa Barrett's original sentencing and the Amendment 821 proceedings that give rise to this appeal.

2

## A.

Section 4A1.1 of the Sentencing Guidelines assigns criminal history points based on a defendant's prior convictions and sentences. U.S.S.G. § 4A1.1. A defendant's total number of points determines her criminal history category (somewhere between I and VI), which is then combined with the defendant's offense level to establish an advisory sentencing range. *See* U.S.S.G § 1B1.1(a) (setting out steps for determining a Guideline range). For example, at her original sentencing, Barrett had a criminal history score of three. She received one criminal history point for a prior state conviction. *See* U.S.S.G. § 4A1.1(c). And directly relevant here, she also received two "status points" because she committed the instant offense – the offense for which she was being sentenced – while on probation for that state conviction. *See* U.S.S.G. § 4A1.1(d) (2016) (adding points for offenses committed "while under any criminal justice sentence, including probation[]").

Next comes Guidelines provision § 2D1.1, which governs offense levels for drug offenses like Barrett's. Depending on her criminal history score, as calculated under § 4A1.1, a defendant may be eligible for a two-level offense reduction under § 2D1.1(b)(17).[1] The first criterion for this reduction is that the "defendant does not have more than 1 criminal history point." U.S.S.G. § 2D1.1(b)(17) (incorporating § 5C1.2(a)(1)). That was enough to render Barrett, with her three criminal history points,

---

[1] Barrett's plea agreement provided that she would be sentenced under the 2016 edition of the U.S. Sentencing Guidelines Manual. Unless otherwise specified, all references to the Guidelines refer to the 2016 edition. We note that this two-level reduction currently appears at U.S.S.G. § 2D1.1(b)(18) (2023).

3

ineligible at the time of her original sentencing. Under the remaining criteria, whether a defendant qualifies turns on whether her offense was violent, her role in the offense, and the extent of her cooperation with the government. *See* U.S.S.G. § 2D1.1(b)(17) (incorporating § 5C1.2(a)(2)-(5)).[2] If a defendant meets all of the criteria, she automatically receives the two-level reduction.

Amendment 821 amends § 4A1.1, the provision for calculating criminal history points. Part A of the amendment limits the impact of "status points" under § 4A1.1. *See* U.S.S.G. Supp. to App. C, amend. 821, part A, at 240-41 (U.S. Sent'g Comm'n 2023). Previously, defendants like Barrett had received two status points – *i.e.*, two criminal history points – if they committed their instant offenses while on probation or under some other criminal justice sentence. Under Amendment 821, that number dropped to one or to zero, depending on the defendant's criminal history. *See* U.S.S.G. § 4A1.1(e) (Nov. 1, 2023). The parties agree that under Amendment 821, Barrett would receive zero status points, reducing her total criminal history points from three to one.

Amendment 821 became effective in November 2023, after Barrett's original sentencing. But Amendment 821 is retroactive, which means that a previously sentenced

---

[2] Section 2D1.1(b)(17) incorporates its standards by reference, providing for a two-level decrease in a defendant's offense level "[i]f the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases)[.]" U.S.S.G. § 2D1.1(b)(17). Section 5C1.2(a), in turn, tracks a federal statute that allows for a departure from a mandatory minimum sentence under the specified circumstances. *See* U.S.S.G. § 5C1.2(a) (incorporating 18 U.S.C. § 3553(f)(1)-(5)). This all sounds very complicated. But as both parties agree, the only issue before us here is application of § 2D1.1(b)(17) itself; Barrett is not seeking a departure from a mandatory minimum sentence, and we need not address eligibility for that relief.

defendant whose Guideline range is lowered by the amendment may seek a sentence reduction under 18 U.S.C. § 3582(c)(2). A § 3582(c)(2) sentence reduction is discretionary, and it must be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(2) – which brings us to § 1B1.10 of the Guidelines, the provision most directly at issue here. The policy statement at § 1B1.10 governs sentence reductions resulting from retroactive Guidelines amendments, instructing district courts to determine such reductions as follows:

> In determining whether, and to what extent, a reduction . . . is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the [retroactive amendment] had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the [retroactive amendment] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1B1.10(b)(1).

## B.

With the table set, we turn to Barrett's sentencing proceedings. Barrett was indicted as one of 28 defendants involved in a drug conspiracy in Southwest Virginia. Pursuant to an agreement with the government, she pled guilty to two counts: distribution of methamphetamine, and conspiracy to possess with intent to distribute methamphetamine.

5

Barrett was sentenced in June 2019. Applying the 2016 edition of the Guidelines, consistent with the parties' plea agreement, the district court determined that Barrett's criminal history score was three: as previously noted, one point for a prior conviction and two status points for committing the instant offense while on probation. That put Barrett in criminal history category II. Barrett's total offense level was 33, which included a three-level reduction for acceptance of responsibility and no enhancements. Together, Barrett's criminal history category and offense level produced a Guideline advisory sentencing range of 151 to 188 months' imprisonment.[3] The district court imposed a sentence of 168 months – in the middle of that range – on each count of conviction, to run concurrently.

When Amendment 821 took effect in 2023, the probation office filed an addendum to Barrett's Presentence Investigation Report ("PSR"), finding her eligible for a sentence reduction. As a result of Amendment 821 Part A, the addendum explained, Barrett no longer received any status points under § 4A1.1, which meant that her criminal history score dropped from three to one and her criminal history category from II to I. With a lower criminal history category of I and an unchanged offense level of 33, the PSR addendum calculated a revised Guideline range of 135 to 168 months' imprisonment, and noted that a revised sentence of 150 months would represent a proportionate reduction in Barrett's sentence.

The government responded, agreeing that Barrett was eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) as a result of Amendment 821. It also agreed with

---

[3] Barrett's two counts of conviction were grouped for Guideline calculation purposes under U.S.S.G. § 3D1.2(b).

6

the PSR addendum that Barrett's revised Guideline range was 135 to 168 months, in light of her lowered criminal history category. Should the court exercise its discretion to grant a reduction, the government advised, a reduced sentence of 150 months would fall midway within that range, at a point analogous to Barrett's original sentence.

Barrett agreed with the government as to her eligibility for a reduction but disagreed as to the rest. According to Barrett, Amendment 821 affected not only her criminal history category but also her offense level: Because she now had only a single criminal history point under § 4A1.1, she was newly eligible for a two-level offense reduction under § 2D1.1(b)(17). And because the record showed that she satisfied all of § 2D1.1(b)(17)'s criteria, Barrett argued, her offense level should go down to 31, which, combined with her criminal history category of I, would yield a revised Guideline range of 108 to 135 months' imprisonment. With that revised range, Barrett finished, a sentence of 120 months – not 150 – would represent a proportionate reduction.

The district court disagreed. It recognized, along with both parties, that Barrett was eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821. *United States v. Melissa Barrett*, No. 18-cr-00025-025, 2024 WL 1070960, at *1 (W.D. Va. Mar. 12, 2024). But in the court's view, like the government's, Amendment 821 could be applied retroactively only to modify Barrett's criminal history score under § 4A1.1, and not her offense level. *Id.* at *1-2. Barrett could not receive the benefit of § 2D1.1(b)(17)'s two-level offense reduction, the court reasoned, because that provision had not been amended by Amendment 821. *Id.* at *2. Instead, application of § 2D1.1(b)(17) was an "other guideline application decision" that must be left "unaffected" under the Sentencing

7

Commission's policy statement at § 1B1.10(b). *Id.* (explaining that the court must "substitute *only*" the retroactive amendment and "*leave all other guideline application decisions unaffected*") (emphasis in original) (quoting U.S.S.G. § 1B1.10(b)).

Accordingly, the court adopted the PSR addendum's revised Guideline range of 135 to 168 months' imprisonment, reflecting a change in Barrett's criminal history category but not her offense level. After considering the § 3553(a) factors, the court granted Barrett relief under Amendment 821, and entered an order reducing her sentence to 150 months.

Barrett timely appealed.

## II.

We review de novo the district court's ruling on the scope of its authority under 18 U.S.C. § 3582(c)(2). *See United States v. Spruhan*, 989 F.3d 266, 269 (4th Cir. 2021). For the reasons given below, we agree with Barrett that the district court construed § 1B1.10(b)'s policy statement too narrowly and failed to give appropriate retroactive effect to Amendment 821.

As the Supreme Court has explained, "[w]hen the [Sentencing] Commission makes a Guidelines amendment retroactive" – as it did with Amendment 821 – "18 U.S.C. § 3582(c)(2) authorizes a district court to reduce an otherwise final sentence that is based on the amended provision." *Dillon v. United States*, 560 U.S. 817, 821 (2010). But in so doing, the district court is bound by the policy statement at § 1B1.10. *See* 18 U.S.C. § 3582(c)(2) (authorizing reduced sentence "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"); *Dillon*, 560 U.S. at

8

830 (affirming mandatory nature of § 1B1.10). So as the parties agree, this case turns on the terms of § 1B1.10(b)(1), which – translated to this case – direct the court to

> determine the amended guideline range that would have been applicable to the defendant if [Amendment 821] had been in effect at the time [she] was sentenced. In making such determination, the court shall substitute only [Amendment 821] for the corresponding guideline provisions that were applied when [Barrett] was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1B1.10(b)(1). Or as the Supreme Court summarized in *Dillon*, § 1B1.10(b)(1) directs district courts to "substitute the amended Guidelines range" only and leave undisturbed all "other guideline application decisions." 560 U.S. at 821 (internal quotation marks omitted).

## A.

The government argues first that this policy statement by its terms prohibited the district court from applying Amendment 821 retroactively to Barrett's offense level. Criminal history categories and offense levels, the government explains, are different things. And Part A of Amendment 821 amended only the calculation of criminal history scores (and concomitant criminal history categories) under § 4A1.1; it made no changes to offense level calculations under § 2D1.1(b)(17). It follows, the government says – and the district court agreed – that the court was limited to recalculating Barrett's criminal history score, while leaving § 2D1.1(b)(17) "unaffected."

We read the policy statement differently. In its first sentence, it tells district courts to "determine the amended guideline range" that would apply if the relevant amendment had been in effect at the time of sentencing. U.S.S.G. § 1B1.10(b)(1); *see Dillon*, 560 U.S.

9

at 821 (under § 1B1.10(b)(1), courts are to "substitute the amended Guidelines range"). A Guideline "range," as explained above, is the product of both a criminal history category and an offense level. It is not a criminal history category standing alone, or "any other intermediate step in the guideline calculation, but the bottom-line, final range that was the basis for the [defendant's] sentence." *See United States v. Koglin*, 822 F.3d 984, 986 (7th Cir. 2016) (internal quotation marks omitted) (rejecting argument that § 1B1.10(b)(1) requires court to look only at provision amended and "ignore any potential interaction" between that provision and "other parts of the guidelines"). And to calculate Barrett's "amended guideline range," it is necessary to account not only for Amendment 821's impact on Barrett's criminal history score under § 4A1.1, but also its direct effect on her eligibility for a lower offense level under § 2D1.1(b)(17).

If plain text left any doubt, we think this reading is supported as well by § 1B1.1(a) of the Guidelines, which provides express instructions for how to "determine" a "guideline range." U.S.S.G. § 1B1.1(a). That provision lays out seven steps, starting with five that together calculate a defendant's offense level, a sixth for the defendant's criminal history category, and then a seventh in which the court will "[d]etermine the guideline range . . . that corresponds to the [defendant's] offense level and criminal history category." U.S.S.G. § 1B1.1(a)(1)-(7); *see United States v. Helm*, 891 F.3d 740, 742-43 (8th Cir. 2018) (describing provision). Given the "near identical language" in this provision ("determine the guideline range") and § 1B1.10(b)(1) ("determine the amended guideline range"), the natural inference is that § 1B1.10, too, contemplates a "determination" of an "amended guideline range" that may incorporate an amendment's impact on both offense

10

level and criminal history category. *See United States v. Zapatero*, 961 F.3d 123, 128 (2d Cir. 2020) (reading § 1B1.10's instructions on retroactivity consistent with § 1B1.1's application instructions).

In fairness, the government does not really contest this common-sense reading of the first sentence of § 1B1.10(b)(1). Instead, it focuses on the second: "[T]he court shall substitute only the [retroactive amendment]" and "shall leave all other guideline application decisions unaffected." According to the government, Barrett's new eligibility for a two-level offense reduction under § 2D1.1(b)(17) is an "other guideline application decision[]" that must be left "unaffected" by Amendment 821. Again, we disagree.

"The phrase 'leave all other guideline application decisions unaffected' simply instructs the court to apply only the amendments [given retroactive effect] and avoid relitigating the factual findings made in the original sentencing decision." *Koglin*, 822 F.3d at 986; *see United States v. Stewart*, 595 F.3d 197, 201 (4th Cir. 2010). So if, for instance, Barrett was asking for a reduction in her offense level based on some other, nonretroactive Guideline change, or challenging an enhancement applied at her original sentencing, that would be foreclosed. But here, the potential change to Barrett's offense level, like the change to her criminal history score, is a direct result of Amendment 821 itself. Put differently, what falls "outside the scope" of § 1B1.10(b)(1) are "aspects of the sentence the defendant seeks to correct that were *not* affected by" the retroactive amendment, *see Dillon*, 560 U.S. at 831 (cleaned up and emphasis added) – and here, Barrett's whole point is that both her criminal history score and her offense level *were* affected by Amendment 821.

11

The scope of Amendment 821's retroactive effect appears to be a question of first impression. But our assessment is consistent with case law applying other retroactive amendments. In *Koglin*, which we have mentioned already, the Seventh Circuit confronted precisely the argument the government is making here: that under § 1B1.10(b)(1), a court may consider the effect of a retroactive amendment only as applied to the amended provision itself. The Seventh Circuit disagreed in no uncertain terms. "The policy statement does *not* instruct the court to ignore the effect of the amended guideline on other guideline provisions that, in combination, produced the defendant's sentencing range." *Koglin*, 822 F.3d at 986 (emphasis in original). The result was that the defendant was ineligible for relief: His two-level reduction under § 2D1.1(a)(5)'s amended drug quantity provision in turn affected an entirely separate provision, "cancel[ling] out" a reduction he originally received and leaving his "amended guideline range" unchanged. *Id.* at 987. Similarly, both parties recognize a series of cases in which retroactive amendments to § 2D1.1(c)(4)'s drug quantities have lowered a defendant's offense level, which in turn affects his status under a different provision – the career offender provision, *see* U.S.S.G. § 4B1.1(b) – not itself amended. *See, e.g.*, *United States v. Tellis*, 748 F.3d 1305, 1308 (11th Cir. 2014) (applying career offender guideline because it became higher than retroactively amended drug weight guideline); *United States v. Counts*, 500 F. App'x 220, 220-21 (4th Cir. Dec. 18, 2012) (same). There seems to be agreement, in other words, that when a retroactive amendment directly affects more than one component of a guideline range, its full effect may and should be accounted for consistent with § 1B1.10(b)(1).

12

We appreciate the government's point that a defendant's criminal history category and her offense level are separate calculations under the Guidelines, serving separate purposes. For that reason, a retroactive change to one ordinarily will not affect the other. But this appears to be an unusual case, in that the Guidelines closely and directly connect the two, tying a defendant's criminal history score under § 4A1.1 to both her criminal history category *and* her qualification for a two-level offense adjustment under § 2D1.1(b)(17). Where an amendment has this kind of direct impact on two provisions integral to a defendant's "amended guideline range," *see* U.S.S.G. § 1B1.10(b)(1), retroactive application of that amendment means accounting for both.

## B.

The government also argues that Amendment 821 cannot be applied retroactively to Barrett's offense level under § 2D1.1(b)(17) because that would entail prohibited fact-finding by the district court. The government does not dispute that as a result of Amendment 821, Barrett now has just one criminal history point, which self-evidently allows her to satisfy the threshold criterion for an offense level reduction under § 2D1.1(b)(17). But § 2D1.1(b)(17) has four other criteria, the government reminds us,[4]

---

[4] The first criterion for the automatic sentence reduction under § 2D1.1(b)(17) – that "the defendant does not have more than 1 criminal history point" – is not at issue, as explained above. The remaining criteria require that

> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines

(Continued)

13

and determining whether Barrett meets those standards, it says, would require fact finding outside the scope of the limited § 3582(c)(2) proceeding permitted by statute and the Commission's policy statement. *See* U.S.S.G. § 1B1.10(a)(3) ("[P]roceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant.").

It is common ground that § 3582(c)(2) permits "only a limited adjustment to an otherwise final sentence and not a plenary resentencing," as the Supreme Court explained in *Dillon*. 560 U.S. at 826. But it does not necessarily follow that a district court can make no factual determinations as part of a § 3582(c)(2) proceeding. Indeed, at the same time the Court in *Dillon* emphasized the "circumscribed nature" of such proceedings, 560 U.S. at 830, it recognized that they *could* involve fact finding by the district court, 560 U.S. at 828 (explaining that "facts found by a judge at a § 3582(c)(2) proceeding" do not implicate a defendant's Sixth Amendment rights).

Consistent with that understanding, we have held squarely that in applying a retroactive guideline amendment under § 1B1.10, a district court is not only permitted but may in some cases be required to make supplemental findings of fact. *United States v.*

---

and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 2D1.1(b)(17) (incorporating criteria at U.S.S.G. § 5C1.2(a)).

14

*Peters*, 843 F.3d 572, 577-78 (4th Cir. 2016).  Section 3582(c)(2), we emphasized, "does not allow a do-over of an original sentencing proceeding, in which the defendant is cloaked in rights mandated by statutory law and the Constitution."  *Id.* at 574 (internal quotation marks omitted).  But it also does not preclude a court from finding facts necessary to determine the effects of a retroactive Guideline amendment on a defendant's sentencing range.  *Id.* at 577-78 (explaining that district court may need to determine drug quantity with more precision than in original sentencing hearing in order to apply retroactive amendment to drug quantity Guideline).  So long as those findings are "supported by the record and consistent with earlier findings," we held, they do not run afoul of any limit on proceedings under § 3582(c)(2).  *Id.* at 577.

When we decided *Peters* in 2016, it already was the case that "our sister circuits agreed that additional findings lie within a sentencing court's discretion."  *Id.* at 578 (cleaned up) (citing cases from multiple circuits).  As far as we can tell – and the government has not cited any contrary authority – that consensus continues to hold, with the circuit courts in general agreement that "nothing prevents the court [in a § 3582(c)(2) proceeding] from making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination."  *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010).

That is all Barrett is asking for here.  According to Barrett, the district court on remand could find that she qualifies for the § 2D1.1(b)(17) reduction based on the record from her first sentencing and without contradicting any earlier findings.  ███████

████████████████████████████████████████████████████████████

15



Under *Peters*, Barrett is entitled to make that case before the district court.[5]

## C.

In sum, we find that the district court misapprehended the scope of its authority in this § 3582(c)(2) proceeding. Amendment 821 applies retroactively, and the court was authorized under the policy statement in § 1B1.10(b)(1) to consider the amendment's effect on both Barrett's criminal history category under § 4A1.1 and her offense level under § 2D1.1(b)(17). We therefore remand so that the district court may determine whether Barrett qualifies for the offense-level reduction under § 2D1.1(b)(17) and, if so, recalculate Barrett's amended Guideline range and reconsider her motion accordingly.

---

[5] Whether the district court could go beyond the existing record in making factual determinations under § 2D1.1(b)(17) is a different question, on which there appears to be a division of authority. *Compare United States v. Hamilton*, 715 F.3d 328, 340 (11th Cir. 2013) ("[T]he court should not consider any evidence or materials beyond those that were before it at the time of the original sentence proceeding.") *with United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014), *as amended* (Sept. 8, 2014) ("[N]ew findings are often necessary" in applying Guidelines amendments retroactively and the district court has "broad discretion in how to adjudicate § 3582(c)(2) proceedings, including whether to hold an evidentiary hearing." (internal quotation marks omitted)). Because Barrett expressly disclaims the need for an evidentiary hearing, we need not resolve that issue today.

16

## III.

For the foregoing reasons, we vacate the district court's judgment and remand to the district court for proceedings consistent with this opinion.

*VACATED AND REMANDED*