# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2290

_____

United States of America

*Appellee*

v.

Jerrell Moore

*Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa

_____

Submitted: February 11, 2013
Filed: February 22, 2013

_____

Before SMITH, ARNOLD, and MELLOY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

The district court[1] denied Jerrell Moore's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). Mr. Moore appeals and we affirm.

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

In 2008, Mr. Moore pleaded guilty to having conspired from early 2006 until his arrest in June, 2007, to manufacture, distribute, and possess with the intent to distribute 50 grams or more of crack cocaine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) (2009), 846. He entered into a plea agreement that did not resolve the issue of drug quantity, and he objected to many paragraphs of the presentence investigation report. The probation officer held an objection meeting with the attorneys, where they stipulated that Mr. Moore was responsible for at least 500 grams but less than 1.5 kilograms of crack, an amount that directly corresponded to a base offense level of 34. *See* U.S.S.G. § 2D1.1(c)(3) (2008).

Two days before sentencing, Mr. Moore's counsel filed a sentencing memorandum stating that his client did not agree with the stipulation or the PSR and maintained that his base offense level was 32. The memorandum disputed the drug quantity finding by challenging, among other things, the reliability of Matthew Davenport, a cooperating co-conspirator whose statements were used to make the drug-quantity finding: Mr. Moore pointed to Mr. Davenport's failure to assert that the conspiracy involved 1000 grams of crack until he met with the government for the fourth time.

At the beginning of the sentencing hearing, the sentencing court (the same judge who later ruled on Mr. Moore's § 3582(c)(2) motion) said that the question of drug quantity was unresolved, and the government offered evidence on the issue. The court attributed more than 500 grams of crack to Mr. Moore and, using a base offense level of 34, calculated his sentencing range as 292-365 months and sentenced him to 292 months' imprisonment. Mr. Moore appealed his sentence, but we dismissed based on an appeal waiver in his plea agreement.

In November, 2011, the Sentencing Commission authorized retroactive application of guideline amendments that reduced the offense levels for certain crack cocaine sentences under U.S.S.G. § 2D1.1. *See* U.S.S.G. app. C, amends. 750, 759.

Mr. Moore relied on the amendments to file a § 3582(c)(2) motion for a sentence reduction. To be eligible for such a reduction, a defendant's original sentence must have been based on a sentencing range that the Sentencing Commission has lowered. 18 U.S.C. § 3582(c)(2); *see* U.S.S.G. § 1B1.10(a), (b). The court thus had to determine Mr. Moore's sentencing range under the amended guidelines, which now provide two different base offense levels for the drug quantity of 500 grams to 1.5 kilograms of crack. The relevant drug quantity must now be at least 840 grams to yield Mr. Moore's original offense level. U.S.S.G. § 2D1.1(c)(3). If the quantity is less than 840 grams of crack, the base offense level falls to 32, *see* U.S.S.G. § 2D1.1(c)(4), which, in turn, would lower Mr. Moore's sentencing range, thus making him eligible for a § 3582(c)(2) reduction.

In response to the § 3582(c)(2) motion, the court appointed counsel for Mr. Moore and allowed the parties to file memoranda as to whether it should reduce Mr. Moore's sentence. The court agreed with the government that Mr. Moore's sentencing range remained the same because he was responsible for more than 840 grams of crack. In its written decision, the court noted that although the PSR had attributed more than 500 grams of crack to Mr. Moore, drug-quantity was in dispute at sentencing. The district judge quoted his own statements from the sentencing transcript: "The amount of crack cocaine involved in this conspiracy that was reasonably foreseeable to Mr. Moore so greatly exceeds 500 grams necessary to be a level 34 that it is hardly worth mentioning. This conspiracy and the acts reasonably foreseeable to Mr. Moore greatly, greatly exceeded that amount." The judge then explained that "[b]y this, [he had] indicated that the defendant was responsible for a multiple of the 500 grams necessary to reach a base offense level of 34." He concluded that the "quantity also exceeds 840 grams currently necessary to reach a base offense level of 34 under the ... amendments" and thus Mr. Moore "is not entitled to a reduction in sentence."

Mr. Moore maintains that the district court erred in making additional findings. According to Mr. Moore, the court could not expand on its original finding that he was responsible for more than 500 grams of crack: He argues that because it did not have authority to make a supplemental finding that Mr. Moore was responsible for at least 840 grams of crack, the court should have concluded that Mr. Moore's sentencing range had decreased under the amendments and that he was eligible for a reduction. We disagree.

In an unpublished decision, we have agreed with other circuits that district courts may make supplemental findings in a § 3582(c)(2) proceeding if the findings are necessary to deciding the motion and do not contradict any findings made at sentencing. *United States v. Christian*, No. 12-2210 (January 29, 2013) (unpublished per curiam); *see also United States v. Almonte*, No. 12-1911, 2012 WL 5974115, at *1 (8th Cir. Nov. 29, 2012) (unpublished per curiam); *United States v. Hernandez*, 645 F.3d 709, 712-13 (5th Cir. 2011); *United States v. Moore*, 582 F.3d 641, 646 (6th Cir. 2009); *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012). For the reasons that follow, we hold that the district court was authorized to make the necessary supplemental finding in this case. And we note, moreover, that the district judge was particularly qualified to make a finding here because he had heard the evidence at sentencing.

Section 3582(c)(2) requires district courts to comply with U.S.S.G. § 1B1.10, the Sentencing Commission's "applicable policy statement[]," 18 U.S.C. § 3582(c)(2), "to determine the prisoner's eligibility for a sentence modification," *Dillon v. United States*, 130 S. Ct. 2683, 2691 (2010). In arguing that supplemental findings are prohibited, Mr. Moore relies heavily on the Supreme Court's statement in *Dillon*, that the "relevant policy statement ... instructs courts proceeding under § 3582(c)(2) to substitute the amended Guidelines range while 'leav[ing] all other guideline application decisions unaffected.' " *Dillon*, 130 S. Ct. at 2688 (quoting U.S.S.G. § 1B1.10(b)(1)). Mr. Moore maintains that district courts that make supplemental

findings do not "leave all other guidelines application decisions intact." But when viewed in context, we think that § 1B1.10(b)(1) not only permits, but may often require, district courts to make findings necessary to resolve § 3582(c)(2) motions. That policy statement states that a district court, in determining whether an amendment has reduced a defendant's sentencing range "*shall determine* the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines ... had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1) (emphasis added). The district court could not comply with the directive to "determine" Mr. Moore's sentencing range under the amended guidelines without making the additional finding.

It is true that § 1B1.1(b)(1) goes on to provide that "[i]n making such determination, the court shall substitute only the [retroactive] amendments ... for the *corresponding guideline provisions* that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Id.* (emphasis added). Contrary to Mr. Moore's contention, though, we do not think that the district court violated the policy's admonition to "leave all other guideline application decisions unaffected" by making a more specific finding as to drug quantity. We think it plain that the Commission was instead prohibiting courts from altering the application of guidelines other than the amended guideline.

As the government states in its brief, Mr. Moore in his opening brief did not contend that the evidence did not support the district court's supplemental finding, challenging only the court's authority to make the finding. But Mr. Moore has filed a *pro se* brief in which he maintains that the record failed to support the court's supplemental finding that he was responsible for 840 grams or more of crack cocaine, and we elect to address that issue.

At Mr. Moore's sentencing, the government presented the testimony of Clinton, Iowa, Police Officer Ronald Heeren and introduced a transcript of the sentencing of

two of Mr. Moore's co-conspirators. Officer Heeren testified that the crack conspiracy took place in Minnesota and Clinton, Iowa: In general, the conspirators transported powder cocaine from Minnesota to Clinton, Iowa, where it was converted to crack and distributed from a Motel 6 and a so-called crack house. Mr. Moore participated in the conspiracy in both locations. Officer Heeren heard one of the conspirators, Eddie Cosey, say that he had the Clinton crack market "cornered" from March, 2006, until June, 2007; police arrested Mr. Cosey, Mr. Moore, Mr. Davenport, and other conspirators at the Motel 6 on June 22, 2007.

At the joint sentencing of Mr. Cosey and another of Mr. Moore's co-conspirators, Officer Heeren testified that, considering distribution at both the motel and the crack house, the conspiracy had sold "multiple" ounces of crack each week. (One ounce equals 28.3495 grams.). Mr. Moore pleaded guilty to participating in a conspiracy that lasted from about February, 2006, until June, 2007, more than fifteen months. But, even assuming that it lasted only a year (52 weeks) and conservatively interpreting "multiple" as 2, the conspiracy would have sold a total of 104 ounces or 2948.348 grams of crack; that quantity is 3.5 times the 840 ounces necessary for Mr. Moore to retain his original base offense level of 34. Though not necessary, we note also that Mr. Davenport testified to similar amounts of crack being sold during the last seven weeks of the conspiracy, after he arrived in Clinton from Minnesota until his arrest. According to Mr. Davenport, the conspiracy sold 2 ounces of crack per week from the Motel 6 during that time: a total of 14 ounces or more than 396 grams of crack in just seven weeks. We need not further detail the evidence of drug quantity to determine that the record provided ample evidence for the district court's supplemental finding.

Affirmed.

_____