# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 18, 2013      Decided January 31, 2014

No. 12-3034

UNITED STATES OF AMERICA,
APPELLEE

v.

GARY WYCHE, ALSO KNOWN AS GARY GUNTER, ALSO KNOWN
AS DRAGO,
APPELLANT

———

Consolidated with 12-3058

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:89-cr-00036)

———

*Tony Axam Jr.*, Assistant Federal Public Defender, argued the cause for appellant Gary Wyche. *Jonathan S. Zucker*, appointed by the court, argued the cause for appellant Richard A. Smith. *A.J. Kramer*, Federal Public Defender, was on brief.

*Jay Apperson*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen*, *Jr.*, United States Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt*

and *Mary Ann Snow*, Assistant United States Attorneys, were on brief.

Before: HENDERSON and SRINIVASAN, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* SRINIVASAN.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In 1989, Appellants Gary Wyche (Wyche) and Richard Smith (Smith) were convicted of drug and firearms offenses for their participation in a Washington, D.C., drug distribution ring. The district court sentenced them to life in prison. In 2008, Wyche and Smith moved for sentence reductions after amendments to the United States Sentencing Guidelines (Sentencing Guidelines) lowered the sentencing ranges for cocaine base crimes. The district court granted Smith's motion but did not then rule on Wyche's motion. Wyche and Smith subsequently filed resentencing motions in 2011 after the United States Sentencing Commission (Sentencing Commission) once again lowered the sentencing ranges for cocaine base offenses. On May 21, 2012, the district court denied Smith's most recent resentencing motion and both of Wyche's motions, concluding that neither was eligible for a sentence reduction under the amended guidelines. We affirm.

## I. Background

### A. Gary Wyche

In 1989, Wyche was arrested and charged with multiple narcotics and firearm offenses resulting from his involvement in a drug conspiracy operating in Washington, D.C. On July 17, 1989, a jury convicted Wyche on six counts of a

twenty-three count indictment[1]: conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a), 846 (Count One); conspiracy to carry and use firearms during and in relation to drug trafficking offenses in violation of 18 U.S.C. §§ 371, 924(c) (Count Three); use of juveniles in drug trafficking in violation of 21 U.S.C. § 845b (1988) (Count Four); assault with a dangerous weapon in violation of D.C. Code § 22-502 (1981) (Count Thirteen); use of a firearm in aid of drug trafficking in violation of 18 U.S.C. § 924(c) (Count Fourteen); and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) (Count Fifteen).

Following trial, the United States Probation Office prepared a presentence report (PSR) for the district court. The PSR indicated that the conspiracy began as early as January 1987, with Michael Palmer, Tony Flow and Anthony Watson selling cocaine base as partners in various Washington, D.C., neighborhoods. According to the PSR, which relied on trial testimony, sometime after December 1, 1987, Wyche acted as Flow's right-hand man in the conspiracy and continued to do so until at least June 1988, when Flow was killed. The PSR indicated that after Flow's death, Wyche continued to participate in the conspiracy through September 1988. [2] Regarding the conspiracy's distributed drug quantity, the PSR stated that "testimony indicated the [conspiracy] to be selling two pounds of cocaine base every two to three days" and "bringing in approximately one pound of cocaine base every two or three days." PSR ¶ 17, *United States v. Wyche*, Crim. No. 89-0036-05 (D.D.C. Aug. 21, 1989) (Sealed Appendix

---

[1] Wyche was indicted on eight of the twenty-three counts.

[2] The PSR stated that Wyche, Smith and Lamar Harris were involved in the September 1988 assault of Brenda March, suggesting that Wyche was still part of the conspiracy.

(SA) 40). "Projecting a conservative estimate from testimony at trial," the PSR continued, "the U.S. Attorney's Office indicated that the group distributed in excess of 150 kilograms of cocaine base from January 1987 until July 1988." *Id.*

At the original October 18, 1989 sentencing hearing, the district court found that Wyche was "a principal member of the . . . conspiracy" and "a major participant in all the activities of the . . . conspiracy, including the distribution of 100 to 200 kilos of crack in the District of Columbia." Sentencing Hr'g Tr. 2-3 (Wyche Sentencing Tr.), *United States v. Wyche*, Crim. No. 89-0036-05 (D.D.C. Oct. 18, 1989) (Appendix for Appellants (AA) Tab 2 at 2-3). "On the basis of the distribution of crack alone, over 500 grams," the district court assigned Wyche the then-highest base offense level of 36, as 500 grams or more of cocaine base triggered that offense level under the Sentencing Guidelines. *Id.* at 4 (AA Tab 2 at 4); *see* U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2D1.1(a)(3)(tbl.) (1988). The district court added a three-level enhancement because Wyche played a managerial role in the conspiracy, a two-level increase for the conspiracy's restraint of a victim during the period in which Wyche was involved and a two-level enhancement for possession of a firearm by a felon, making the offense level 43. With a total offense level of 43 and a criminal history category of 5, Wyche's guideline range was life imprisonment. The district court sentenced Wyche to life in prison plus a consecutive five-year term based on his conviction of unlawful use of a firearm in aid of drug trafficking. *See* 18 U.S.C. § 924(c).

Wyche appealed his convictions following sentencing and we affirmed. *United States v. Harris*, 959 F.2d 246, 264 (D.C. Cir. 1992), *abrogated on other ground by United States v. Stewart*, 246 F.3d 728 (D.C. Cir. 2001). We did, however, remand to the district court for resentencing, concluding that

"verification of the correct drug amount" was necessary because language in Wyche's PSR indicated that Wyche may have been responsible for only 250 grams of cocaine base, which would not have triggered a base offense level of 36. *Id.* at 264-65. We also determined that the district court erred by imposing a two-level increase for possession of a firearm during a drug conspiracy. *Id.* at 266-67. We affirmed the two-level enhancement for the conspiracy's restraint of a victim and the three-level enhancement for Wyche's managerial role in the conspiracy. *Id.* at 265-66. With respect to the district court's conclusion that Wyche "was a major participant in all the activities of the . . . conspiracy, including the distribution of 100 to 200 kilos of crack," we concluded that the finding was not clearly erroneous. *Id.* at 266 (quotation marks omitted).

On remand, the Probation Office prepared a revision of the original PSR (Revised PSR). The Revised PSR, dated July 15, 1992, stated that Wyche was "Tony Flow's right hand man, and that Mr. Wyche had a number of individuals who were working for him." Mem. 1 (Revised PSR), *United States v. Wyche*, Crim. No. 89-0036-05 (D.D.C. July 15, 1992) (SA 59). Although the Revised PSR did not indicate precisely when Wyche joined the conspiracy, it concluded that Wyche actively participated until September 1988. It also clarified the original PSR's drug quantity finding:

> [T]estimony at the trial indicate[d] that the organization received at least two pounds of cocaine base a week (453.6 grams per pound or 907.2 grams per week) from January 1987 to September of 1988. Therefore, a conservative calculation provides that this organization received at least 70.761 kilograms of cocaine base during this 78-week time span. As a member of the conspiracy at this time, the defendant is held

accountable for all of the drugs the organization received.

*Id.* at 2 (SA 60). Wyche did not contest the Revised PSR's drug quantity calculation[3] but instead claimed that he did not play a managerial role in the conspiracy and that there was no evidence linking him to the conspiracy before December 1987.

Wyche was resentenced on January 12, 1993. Based on the evidence at trial, the original sentencing district judge found that 500 grams or more of cocaine base were attributable to Wyche. Accordingly, the court assigned Wyche a base offense level of 36 and again added a three-level enhancement for Wyche's role as a manager and a two-level enhancement for the conspiracy's restraint of a victim, bringing the total offense level to 41. An offense level of 41 and a criminal history category of 5 produced a guideline range of thirty years to life and the district court again sentenced Wyche to life plus five years consecutive. Wyche again appealed and we affirmed the sentence. *See United States v. Wyche*, No. 93-3003, 1993 WL 478952, at *1 (D.C. Cir. Nov. 12, 1993) (per curiam).

In November 2007, the Sentencing Commission lowered various guideline ranges for cocaine base offenses, *see* U.S.S.G. suppl. to app. C, amends. 706, 711 (Nov. 1, 2007), and later made the reductions retroactive. *Id.* amend. 713 (Nov. 1, 2009). While 500 grams or more of cocaine base had triggered a base offense level of 36 at Wyche's 1993 resentencing, *see* U.S.S.G. § 2D1.1(a)(3)(tbl.) (1988), the 2007 amendment provided that between 500 grams and 1.5 kilograms of cocaine base produced a base offense level of 34,

---

[3] Wyche in fact suggested a base offense level of 36 because the conspiracy distributed more than 500 grams of cocaine base.

*see* U.S.S.G. suppl. to app. C, amend. 706 (Nov. 1, 2007); U.S.S.G. § 2D1.1(c)(3)(2007). In light of the lower guideline range, Wyche moved *pro se* for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). Wyche subsequently supplemented his motion through appointed counsel. Before the district court ruled on the motion, however, the guideline ranges for cocaine base offenses were further reduced so that 500 grams of cocaine base now results in a base offense level of 32. *See* U.S.S.G. suppl. to app. C, amend. 750 (Nov. 1, 2011) (repromulgating temporary amend. 748); U.S.S.G. § 2D1.1(c)(4) (2011). Wyche then moved for resentencing under the 2011 amendment.

After considering "the motion, the government's opposition, the defendant's reply, the applicable law, and the entire record herein," the district court (2012 district court) found that Wyche was not eligible for a sentence reduction and denied both of his outstanding motions. Mem. & Order 1, *United States v. Wyche*, Crim. No. 89-36-5 (RCL) (D.D.C. May 21, 2012) (AA 262) (citations omitted). Because the original sentencing court did not make a specific drug quantity determination at Wyche's 1993 resentencing, the 2012 district court made its own factual finding that Wyche "was responsible for more than 8.4 kilograms of crack." *Id.* at 7 (AA 268). It relied on the original sentencing court's finding at Wyche's 1989 sentencing hearing that "the conspiracy handled roughly 100 to 200 kilograms of crack," an estimate the 2012 district court noted was "in line with the one in [Wyche's PSR]." *Id.* Citing our decision in *United States v. Law*, 528 F.3d 888, 906 (D.C. Cir. 2008),[4] the 2012 district

---

[4] In *Law*, the district court sentenced the defendant based on "all of the crimes reasonably foreseeable within [the] conspiracy," including "the entire sum of the drugs within the conspiracy." 528 F.3d at 906. We found that "the district court did not commit plain error by relying on the jury's aggregated drug quantity." *Id.*

court then, it appears from the record,[5] determined that Wyche was responsible for the entire drug quantity distributed by the conspiracy.  Mem. & Order 7 (AA 268).  Because the quantity attributable to Wyche exceeded 8.4 kilograms of cocaine base—the threshold for a base offense level of 38 under the current guideline range—the 2012 district court kept Wyche's base offense level of 36 intact, concluding that the amended guideline range had not lowered it.  Accordingly, the court denied his motions.

## B. Richard Smith

Like Wyche, Smith was arrested and charged in 1989 with multiple drug and firearms offenses for his role in the conspiracy.  On July 17, 1989, a jury convicted Smith on seven counts of a twenty-three count indictment[6]: conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a), 846 (Count One); conspiracy to carry and use firearms during and in relation to a drug trafficking offense in violation of 18 U.S.C. §§ 371, 924(c) (Count Three); use of juveniles in drug trafficking in violation of 21 U.S.C. § 845(b) (1988) (Count Four); distribution and possession with intent to distribute fifty grams or more of a mixture containing cocaine base in violation of 21 U.S.C. § 841(a),(b)(1)(A)(iii) (1988) (Count Twenty); use of a firearm in aid of drug trafficking in violation of 18 U.S.C. § 924(c) (Count Twenty-One); possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) (Count Twenty-Two); and unlawful possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (Count Twenty-Three).

---

[5] *See infra* at pp. 18-19.

[6] Smith was indicted on thirteen of the twenty-three counts.

On October 18, 1989, Smith was sentenced to life plus thirty years in prison, to be served consecutively. At the sentencing hearing, the district court found that "Mr. Smith was an integral part of the [conspiracy] since his release from jail in June or July of 1988 until January of 1989" and that "Smith together with Harris and Wyche were . . . principal lieutenants" of Michael Palmer, who, as noted, was one of the conspiracy's ring leaders. Sentencing Hr'g Tr. 2 (Smith Sentencing Tr.), *United States v. Smith*, Crim. No. 89-0036-03 (D.D.C. Oct. 18, 1989) (AA Tab 1 at 2). The district court also concluded that, while it "[did not] know exactly how much crack was distributed during the period that Mr. Smith was a participant," it had "heard about four kilos a month, which is so much more for the period in which he was a participant than the 500 grams which are required for the highest level under the offense computation required by the guidelines." *Id.* Accordingly, it assigned Smith a base offense level of 36, to which it added a three-level enhancement for Smith's managerial role in the conspiracy. With a total offense level of 39 and a criminal history category of 5, Smith's guideline range was thirty years to life. The district court sentenced Smith to life in prison plus a consecutive thirty-year term for his conviction on Count Twenty-One. We reversed Smith's conviction on Count Twenty-One and affirmed his convictions on the other counts and his life sentence. *See Harris*, *supra*.

On June 5, 2008, Smith moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) after the guideline ranges for cocaine base crimes were reduced. *See* U.S.S.G. suppl. to app. C, amends. 706, 711 (Nov. 1, 2007). The Government did not oppose Smith's motion and the Probation Office recommended a reduction in Smith's total offense level from 39 to 37, producing a sentencing range of 324-405 months' imprisonment. On September 18, 2008, the district court reduced Smith's total offense level from 39 to 37 and

resentenced him to 405 months' imprisonment. Although the one-page order granting the motion did not explain the reduction, it appears that the court arrived at a total offense level of 37 by lowering Smith's *base* offense level from 36 to 34 but keeping the three-point enhancement. Under the 2007 Sentencing Guidelines, a base offense level of 34 corresponded to offenses involving between 500 grams and 1.5 kilograms of cocaine base. *See* U.S.S.G. § 2D1.1(c)(3) (2007).

On October 17, 2011, Smith moved again for a reduced sentence after the Sentencing Commission further reduced the guideline ranges applicable to cocaine base crimes. *See* U.S.S.G. suppl. to app. C, amend. 750 (Nov. 1, 2011). Among other changes, the 2011 amendment provided that crimes involving at least 280 grams but fewer than 840 grams of cocaine base corresponded to a base offense level of 32. *Id.*; *see* U.S.S.G. § 2D1.1(c)(4) (2011). Smith claimed that he was entitled to a new base offense level of 32 because he had been responsible for only 500 grams of cocaine base.

After considering "the motion, the government's opposition, the defendant's reply, the applicable law, and the entire record herein," the 2012 district court found that Smith was ineligible for a sentence reduction and denied his motion. Mem. & Order 1, *United States v. Smith*, Crim. No. 89-36-3 (RCL) (D.D.C. May 21, 2012) (AA 139) (citations omitted). The 2012 district court first concluded that the original sentencing court had "determined the defendant to be responsible for roughly 22 kilograms of crack." *Id.* at 7 (AA 145). The 2012 court relied on statements made by the court at Smith's 1989 sentencing hearing in concluding that "the conspiracy handled roughly 4 kilograms a month—an estimate in line with the [PSR]—and that the defendant was involved in the conspiracy from between June or July of 1988 until his arrest on January 9, 1989." *Id.* at 6 (AA 144). The 2012

district court again made its own quantity determination, stating that "[i]t is therefore not inconsistent with [the original sentencing court's] factual findings to conclude from the record that the defendant was responsible for more than 8.4 kilograms of crack." *Id.* at 7 (AA 145). Once again citing *Law*, the 2012 district court apparently arrived at "more than 8.4 kilograms of crack" by finding Smith responsible for the entire 22 kilograms of cocaine base distributed by the conspiracy while Smith was a participant. *Id.*; *see supra* note 4. Having found Smith responsible for *more* cocaine base than his base offense level of 34 supported, the court denied his motion.

## II. Analysis

Smith and Wyche filed timely appeals and we consolidated them. Order 1, *United States v. Wyche*, No. 12-3034 (D.C. Cir. Aug. 23, 2012). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). *See In re Sealed Case*, 722 F.3d 361, 364 (D.C. Cir. 2013). We review the district court's denial of a section 3582(c)(2) motion for abuse of discretion. *See United States v. Kennedy*, 722 F.3d 439, 442 (D.C. Cir. 2013). We review the district court's factual findings for clear error. *Id.* Under the clearly-erroneous standard, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it." *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985). We may affirm the district court's denial of a resentencing motion on any basis supported by the record. *See United States v. Taylor*, 627 F.3d 674, 676 (7th Cir. 2010) (appellate court may affirm district court's ruling on section 3582(c)(2) motion "on any ground supported in the record"); *United States v. Green*, 595 F.3d 432, 436 (2d Cir. 2010) (same); *see also Jones v. Bernanke*,

557 F.3d 670, 676 (D.C. Cir. 2009) ("[W]e may affirm a judgment on any ground the record supports . . . .").

Under 18 U.S.C. § 3582(c)(2), a defendant may move for a reduction in his term of imprisonment if he was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). "District courts retain broad authority to control § 3582(c)(2) proceedings." *Kennedy*, 722 F.3d at 442. A section 3582(c)(2) proceeding is not a "plenary resentencing proceeding," *Dillon v. United States*, 130 S. Ct. 2683, 2691 (2010), nor is it "a license for the defendant to re-litigate his sentence wholesale or challenge previously adjudicated aspects of his conviction," *Kennedy*, 722 F.3d at 442; *see also United States v. Adams*, 104 F.3d 1028, 1031 (8th Cir. 1997) ("We think it implicit . . . that the district court is to leave all of its previous factual decisions intact . . . ."). Instead, a district court considering a section 3582(c)(2) motion is to engage in a limited, two-step inquiry. *See Dillon*, 130 S. Ct. at 2691-92. The district court must "begin by 'determin[ing] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Dillon*, 130 S. Ct. at 2691 (quoting U.S.S.G. § 1B1.10(b)(1)) (brackets in original). If the defendant is eligible for a reduced sentence under the amendment, the court must then "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* at 2692.

"Under the Sentencing Guidelines, the district court determines a defendant's base offense level"—and, ultimately, his guideline range—"by delineating his 'relevant conduct.' " *United States v. Thomas*, 114 F.3d 228, 254 (D.C. Cir. 1997)

(quoting U.S.S.G. § 1B1.3). "In a drug conspiracy, the amount of drugs attributable to any one codefendant as 'relevant conduct' for guidelines purposes is limited to the reasonably foreseeable transactions in furtherance of that codefendant's 'jointly undertaken criminal activity' . . . ." *United States v. Easter*, 553 F.3d 519, 523 (7th Cir. 2009) (quoting U.S.S.G. § 1B1.3(a)(1)(B)); *see also Thomas*, 114 F.3d at 254-55. A court may rely "on evidence of a defendant's relationship to and involvement with the conspiracy in order to draw permissible inferences regarding" the scope of his agreement to the conspiratorial conduct "and the foreseeability of his co-conspirators' conduct." *Thomas*, 114 F.3d at 260. If the defendant plays a managerial role in a drug conspiracy, coordinates drug distribution with other managers of the conspiracy and shares in the conspiracy's profits, he may be held responsible for the entire drug quantity attributable to the conspiracy during the time he was a participant. *See id.*; *see also Law*, 528 F.3d at 906.

At the outset, we address the district court's authority to make independent factual findings in a section 3582(c)(2) resentencing proceeding. In order to determine the defendant's amended guideline range for a drug-related offense, the resentencing court must determine the drug quantity attributable to the defendant. If the original sentencing court failed to make a specific drug-quantity calculation, the resentencing court may have to make its own quantity finding in order to determine the defendant's guideline range. The 2012 district court was confronted with this scenario, as the original sentencing court found only that Wyche and Smith were both responsible for at least 500 grams of cocaine base. While a finding of at least 500 grams of cocaine base triggered a base offense level of 36 under the guidelines applied by the original sentencing judge in 1989 (and in Wyche's 1993 resentencing), *see* U.S.S.G.

§ 2D1.1(a)(3)(tbl.) (1988), the 2012 district court could not determine Wyche's or Smith's amended guideline range on the basis of the 1989 and 1993 findings because the 2011 amendment specified four different base offense levels for crimes involving over 500 grams of cocaine base—level 32 (at least 280 grams but less than 840 grams), level 34 (at least 840 grams but less than 2.8 kilograms), level 36 (at least 2.8 kilograms but less than 8.4 kilograms) and level 38 (8.4 kilograms or more of cocaine base), *see* U.S.S.G. suppl. to app. C, amend. 750 (Nov. 1, 2011); U.S.S.G. § 2D1.1(c)(1)-(4) (2011).

Given the obvious need for additional fact-finding in cases like these, we join a number of our sister circuits in concluding that a resentencing court is permitted to make an independent drug quantity finding if it cannot determine the defendant's amended guideline range without doing so. *See United States v. Moore*, 706 F.3d 926, 928-29 (8th Cir. 2013); *United States v. Hamilton*, 715 F.3d 328, 340 (11th Cir. 2013); *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010). Consistent with our *Kennedy* decision, however, the resentencing court's quantity finding cannot be inconsistent with factual determinations made by the original sentencing court. *See* 722 F.3d at 442 (resentencing proceeding is "not a license for the defendant to . . . challenge previously adjudicated aspects of his conviction"); *see also Moore*, 706 F.3d at 928-29; *Hamilton*, 715 F.3d at 340; *Hall*, 600 F.3d at 876.[7]

---

[7] While Wyche and Smith do not challenge the 2012 district court's authority to make an independent drug quantity finding, we nonetheless address the issue to provide the district court with guidance.

## A. Gary Wyche

Wyche raises two arguments challenging the district court's denial of his resentencing motions. First, he asserts that, by failing to establish that he was responsible for a specific amount of cocaine base at his 1993 resentencing, the Government cannot subsequently contest drug quantity. Wyche's second contention is that the district court's finding that he was responsible for more than 8.4 kilograms of cocaine base is without adequate factual or legal support. We address each argument in turn.

Wyche's claim that the Government cannot now contest drug quantity is without merit. Under the Sentencing Guidelines applied at Wyche's 1993 resentencing proceeding, 500 grams of cocaine base triggered the highest base offense level for cocaine base crimes. *See* U.S.S.G. § 2D1.1(a)(3)(tbl.) (1988). Having established that Wyche was responsible for more than 500 grams, the Government was not required to prove—and had no reason to argue—that Wyche was responsible for any amount of cocaine base *over* 500 grams. Under these circumstances, we believe the Government is free to challenge drug quantity.[8]

Wyche's attack on the 2012 district court's drug quantity calculation is similarly unavailing, as Wyche's Revised PSR and the trial record support the court's attribution of more than 8.4 kilograms of cocaine base to Wyche. Wyche's Revised PSR stated that the conspiracy "received at least two pounds of

---

[8] Neither the Government nor Appellants Wyche and Smith can argue that the amount of cocaine base was fewer than 500 grams as that issue was definitively settled by the original sentencing court in 1989 (Wyche and Smith) and again in 1993 (Wyche). *See Kennedy*, 722 F.3d at 442.

cocaine base a week (453.6 grams per pound or 907.2 grams per week) from January 1987 to September of 1988." Revised PSR 2 (SA 60). Wyche did not contest this amount when he was resentenced in 1993 and we are free to use it in assessing the 2012 district court's calculation.[9] *Cf. United States v. Pinnick*, 47 F.3d 434, 437 (D.C. Cir. 1995) ("[A] sentencing court may rely on undisputed facts in a presentence report . . . ."). Although the exact length of Wyche's participation in the conspiracy is unclear, the record indicates—and Wyche all but conceded before the original sentencing court[10]—that he had joined the conspiracy by at least late December 1987. According to the Revised PSR, his involvement lasted until September 1988. As a conservative estimate, Wyche was involved in the conspiracy for at least thirty-five weeks from

[9] Although the 2012 district court did not expressly rely on the Revised PSR in calculating the drug quantity, we may affirm that court's quantity finding "on any ground supported in the record." *Taylor*, 627 F.3d at 676; *see also Green*, 595 F.3d at 436 (same). The fact that the original sentencing court likewise did not adopt the Revised PSR is not problematic either. *See United States v. Duncan*, 639 F.3d 764, 768 (7th Cir. 2011) (resentencing court entitled to rely on PSR that defendant failed to object to at original sentencing despite fact that original sentencing court did not adopt PSR); *see also United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009) ("If a defendant fails to specifically object to a fact in the PSR, the fact is deemed admitted by the defendant . . . ."); *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012) (resentencing court may examine "the trial transcript, the sentencing hearing transcript, and the portions of the presentence report that the defendant admitted to *or* the sentencing court adopted" (emphasis added)).

[10] While Wyche did not concede participation in the conspiracy itself, he *did* admit before his 1989 and 1993 sentencing hearings to selling drugs and working with Tony Flow by late 1987—conduct the original sentencing court found was part of the conspiracy.

the beginning of January 1988 to early September 1988. Thus, using the 907.2 gram-per-week figure included in the Revised PSR, the record reflects that the conspiracy handled roughly 31 kilograms of cocaine base (thirty-five weeks multiplied by 907.2 grams per week) during the period in which Wyche was a participant.

Moreover, the record also supports holding Wyche responsible for the entire drug quantity handled by the conspiracy during his undisputed period of involvement. The original sentencing court found at Wyche's 1989 sentencing proceeding that Wyche was a "principal member of the . . . conspiracy" and a "major participant in all the activities of the . . . conspiracy, including the distribution of 100 to 200 kilos of crack," Wyche Sentencing Tr. 2-3 (AA Tab 2 at 2-3), findings this Court later affirmed, *see Harris*, 959 F.2d at 266. In addition, the original district court's findings were corroborated by an abundance of trial testimony indicating that Wyche separated drugs and counted money for the conspiracy, collected money from individuals selling drugs, distributed cocaine for sale and supervised drug sales. Given Wyche's extensive involvement, the 31 kilograms of cocaine base were reasonably foreseeable to him and thus he may be held responsible for that quantity.[11]  *See United States v. Duncan*, 639 F.3d 764, 767-69 (7th Cir. 2011) (rejecting defendant's claim that he did not foresee the conspiracy handling over 4.5 kilograms of cocaine base as "[im]plausible" and "baseless" where conspiracy sold "staggering amount of crack" and

---

[11] Because there was insufficient evidence that Wyche had joined the conspiracy before December 1987, a fact acknowledged in Wyche's original PSR, the Revised PSR mistakenly held Wyche responsible for the entire quantity of drugs handled by the conspiracy from January 1987 to September 1988.

defendant had access to "stash-locations" and "high-level meetings"); *Thomas*, 114 F.3d at 256-57 (holding defendant responsible for conspiracy's entire drug quantity where defendant played managerial role in the conspiracy, coordinated drug distribution and shared in conspiracy's profits). Accordingly, the 2012 district court did not clearly err in determining that Wyche's participation in the conspiracy made him responsible for over 8.4 kilograms of cocaine base, triggering the highest base offense level—38—under the 2011 amendment.

In addition, the 2012 district court's calculation is not inconsistent with the findings of the original sentencing court. At Wyche's 1993 resentencing hearing, the court stated that "the trial evidence established beyond doubt, and this court finds, that *the defendant* and the conspiracy to which he belonged distributed more than 500 grams of crack cocaine." Wyche Sentencing Tr. 12 (AA Tab 3 at 12) (emphasis added). The 2012 district court's conclusion that Wyche was responsible for more than 8.4 kilograms of cocaine base is not inconsistent with this determination. *See United States v. Woods*, 581 F.3d 531, 539 (7th Cir. 2009) ("[A] finding that the defendants were responsible for at least 4.5 kilograms is not inconsistent with the conclusion of the original sentencing court that the defendants were responsible for amounts in excess of 1.5 kilograms.").

Under the Sentencing Guidelines in effect in 2012 (and today), an offense involving a quantity of cocaine base over 8.4 kilograms results in a base offense level of 38. *See* U.S.S.G. § 2D1.1(c)(1) (2011); U.S.S.G. § 2D1.1(c)(1) (2013). With Wyche's enhancements, his total offense level under the 2011 amendment would be 43. Because Wyche's pre-2011 amendment total offense level was 41, his total offense level and guideline range under the 2011 amendment would in fact

*increase*, thereby precluding relief under section 3582(c)(2). *See Dillon*, 130 S. Ct. at 2691-92. Accordingly, the district court did not abuse its discretion in denying Wyche's resentencing motion.

## B. Richard Smith

Smith first contends that the law-of-the-case doctrine barred the 2012 district court from revisiting the drug calculation made during his 2008 resentencing. In granting Smith's 2008 resentencing motion, the district court lowered Smith's total offense level from 39 to 37 and resentenced him to 405 months' imprisonment. It appears that the district court arrived at the reduced sentence by lowering Smith's *base* offense level from 36 to 34, corresponding to 500 grams to 1.5 kilograms of cocaine base under the then-existing guideline range. *See* U.S.S.G. § 2D1.1(c)(3) (2007).[12] Smith now contends that by assigning him a base offense level corresponding to 500 grams to 1.5 kilograms of cocaine base, the 2008 resentencing court necessarily found that he was responsible for 500 grams of cocaine base and no more. Under Smith's argument, this "implicit" finding became the "law of the case" and precluded the 2012 district court from concluding that he was responsible for more than 8.4 kilograms of cocaine base.[13]

---

[12] There is no reason to believe that the 2008 resentencing court altered the three-level enhancement for Smith's managerial role in the conspiracy. Thus, the most likely explanation for the reduction is that the court lowered Smith's base offense level.

[13] The law-of-the-case doctrine provides that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).

The 2012 district court's failure to credit the 2008 resentencing court's calculation does not pose a problem. First, it is uncertain whether Smith may be heard on his law-of-the-case argument given his failure to raise the issue before the 2012 district court. *See United States v. TDC Mgmt. Corp.*, 288 F.3d 421, 425 (D.C. Cir. 2002) (" 'It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.' " (quoting *District of Columbia v. Air Fla.*, 750 F.2d 1077, 1084-85 (D.C. Cir. 1984) (quotation marks omitted))). Even assuming *arguendo* that Smith's law of the case argument was not forfeited and that the 2008 resentencing court's determination *is* the law of the case, the 2012 district court's deviation therefrom is harmless error. *See United States v. Brinson-Scott*, 714 F.3d 616, 622 (D.C. Cir. 2013) ("Error is harmless if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (quotation marks omitted)). Contrary to Smith's assertion, the only conclusion that can be drawn from the 2008 resentencing court's assignment of a base offense level of 34 is that Smith was responsible for at least 500 grams and no more than 1.5 kilograms of cocaine base, the quantity range corresponding to a base offense level of 34 following the 2007 amendment. *See* U.S.S.G. § 2D1.1(c)(3) (2007). Thus, to the extent the 2012 district court was bound, it was bound to this range. To be eligible for a second sentence reduction, however, Smith had to demonstrate that he was responsible for *fewer than* 840 grams of cocaine base—the dividing line (under the 2011 and current guideline ranges) between Smith's existing base offense level of 34 and a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(3),(4) (2011); U.S.S.G. § 2D1.1(c)(3),(4) (2013). In other words, the 2012 district court was free to attribute between 840 grams and 1.5 kilograms of cocaine base to Smith if such attribution was consistent with the record. Given its conclusion that Smith

was responsible for over 8.4 kilograms of cocaine base, it is plain that the 2012 district court would have found Smith responsible for a disqualifying amount of cocaine base—more than 840 grams—had it expressly followed the 2008 resentencing court. While we must nonetheless review the 2012 district court's drug calculation for clear error, its alleged failure to follow the law of the case is, by itself, harmless. *See Williams v. United States*, 503 U.S. 193, 203 (1992) (district court's error is harmless if it "[does] not affect the district court's selection of the sentence imposed"); *cf. United States v. Thompson*, 994 F.2d 864, 868 (D.C. Cir. 1993) ("Because the judge made it clear he would impose the same sentence under either criminal history category, it would be futile to remand for resentencing and we are not required to do so.").

Smith also argues that, separate from any law-of-the-case strictures, the 2012 district court erred in determining that he was responsible for more than 8.4 kilograms of cocaine base. In particular, Smith argues that "[n]either [the original sentencing court's] comment that 'we heard about' the conspiracy distributing 4 kilos a month, [its] finding that Mr. Smith 'did distribute more than 500 grams,' nor the [PSR] estimate . . . support [sic] the district court's finding in 2012 that Mr. Smith was accountable for more than 8.4 kilograms." Br. for Appellants Richard Smith and Gary Wyche 25, *United States v. Smith*, Nos. 12-3034, 12-3058 (D.C. Cir. Oct. 30, 2012).

Contrary to Smith's assertion, the record amply supports the 2012 district court's determination that *over* 8.4 kilograms of cocaine base were attributable to Smith. The original sentencing court found that the conspiracy handled roughly 4 kilograms of cocaine base per month during Smith's five-plus months' participation, which amounts to roughly 22 kilograms of cocaine base total. Smith did not object to the figure then

and the 2012 district court was entitled to rely on it in making its drug quantity finding. *See Valentine*, 694 F.3d at 670 ("[T]he modification court must determine whether a preponderance of the evidence in the record," including the sentencing hearing transcript, "establishes that the defendant is responsible for the quantity of drugs set forth in the retroactive amendment.").

Although the 2012 district court framed its calculation as "more than 8.4 kilograms," it is apparent that the court arrived at this figure by finding Smith responsible for the entire 22 kilograms handled by the conspiracy during the time he was a participant. *See supra* note 4. The attribution of 22 kilograms to Smith is supported by the record. The original sentencing court concluded that Smith was an "integral" member of the conspiracy, finding "substantial evidence" that Smith played a managerial role in the enterprise. Smith Sentencing Tr. 2-3 (AA Tab 1 at 2-3). The findings were supported by trial testimony from multiple witnesses that Smith counted and separated drugs received by the conspiracy, distributed drugs for other individuals to sell, directed others regarding where to distribute cocaine base and how much to sell, received and counted money collected by co-conspirators selling drugs on the street and took charge of the organization when the conspiracy's other leaders were absent. Given his heavy involvement, the 22 kilograms were foreseeable by Smith. *See Duncan*, 639 F.3d at 767-69 (finding defendant's claims that he did not foresee conspiracy handling over 4.5 kilograms of cocaine base "[im]plausible" and "baseless" where conspiracy sold "staggering amount of crack" and defendant had access to "stash-locations" and "high-level meetings"); *Thomas*, 114 F.3d at 255-57 (holding defendant responsible for conspiracy's entire drug quantity where defendant played managerial role in conspiracy, coordinated drug distribution and shared in conspiracy's profits). Finally,

the 2012 district court's quantity determination was not inconsistent with the original sentencing court's finding. At the 1989 proceeding, the court found that Smith "did distribute more than 500 grams of crack during the period when he was a member." Smith Sentencing Tr. 2 (AA Tab 1 at 2). The 2012 district court's conclusion that Smith was responsible for more than 8.4 kilograms of cocaine base is entirely consistent with the original sentencing court's attribution of "*more than 500 grams*" of cocaine base to Smith. *Id.* (emphasis added); *see Woods*, 581 F.3d at 539.

In sum, Smith is not entitled to a second sentence reduction because the record manifests that he was responsible for a disqualifying amount of cocaine base. Even assuming that the 2012 district court erred in deviating from the 500-gram-to-1.5-kilogram quantity range calculated by the 2008 resentencing court, plainly it could have found, and in fact did find, Smith responsible for an amount of cocaine base exceeding the 840-gram threshold. Because the record reflects that the 2012 district court's calculation of 8.4 kilograms was not clearly erroneous, a quantity finding greater than 840 grams of cocaine base is not clearly erroneous either. And because Smith was not eligible for a second sentence reduction, the 2012 district court did not abuse its discretion in denying his motion.

\* \* \* \* \* \*

For the foregoing reasons, we affirm the district court's judgments.

*So ordered.*

SRINIVASAN, *Circuit Judge*, *concurring in part* and *dissenting in part*: I concur in the court's opinion insofar as it affirms as to appellant Wyche's sentence. I respectfully dissent from Part II.B of the court's opinion, however, in which the court affirms as to appellant Smith's sentence on harmless-error grounds even though the government has made no request that we do so.

As the Court explains, a district court's drug quantity finding in a sentence modification proceeding under 18 U.S.C. § 3582(c)(2) "cannot be inconsistent with factual determinations made by the original sentencing court." *Ante*, at 14; *accord United States v. Kennedy*, 722 F.3d 439, 442 (D.C. Cir. 2013). The same principle necessarily governs in the context of successive § 3582(c)(2) motions: a district court's quantity finding in the later sentence modification proceeding cannot be inconsistent with factual determinations made by the court that decided the defendant's earlier motion. Here, when the district court modified Smith's sentence in 2008, the court assigned Smith a base offense level of 34, which at the time corresponded to offenses involving at least 500 grams but less than 1.5 kilograms of crack. *Ante*, at 10, 19 & n.12; *see* U.S.S.G. § 2D.1(c)(3) (2007). But when the district court in 2012 later denied Smith's subsequent § 3582(c)(2) motion, the court held that Smith's base offense level is 38, which now corresponds to offenses involving 8.4 kilograms of crack or more. *See* U.S.S.G. § 2D1.1(c)(1) (2011). The 2012 determination that Smith's base offense level is 38 cannot be squared with the 2008 determination that his base offense level is 34. The 2012 district court's order therefore should be vacated, and the case should be remanded so that the district court can recalculate Smith's base offense level consistent with the 2008 decision.

The majority understandably does not defend the 2012 court's disregard of the drug quantity range established by the 2008 court. Instead, the majority affirms the decision on

harmless-error grounds, reasoning as follows. Under the 2011 crack cocaine amendments, the base offense level of 34 now corresponds to at least 840 grams but less than 2.8 kilograms of crack, while the base offense level of 32 corresponds to at least 280 grams but less than 840 grams of crack. Smith qualifies for a sentence reduction only if his new base offense level is 32. Even though the 2012 district court could not attribute more than 1.5 kilograms of crack to Smith, the court still could have denied Smith's motion if it had held him responsible for anywhere between 840 grams and 1.5 kilograms of crack. And because the 2012 court concluded that Smith was responsible for more than 8.4 kilograms of crack, the court necessarily would have held him responsible for at least 840 grams of crack. *See ante*, at 20-21.

Significantly, the government did not advance that (or any) harmless-error argument in its submissions to this court. And although we have "discretion to determine *sua sponte* whether an error is harmless," *United States v. Davis*, 596 F.3d 852, 861 (D.C. Cir. 2010), the exercise of that discretion should be carefully circumscribed, *see United States v. Pryce*, 938 F.2d 1343, 1348 (D.C. Cir. 1991) (opinion of Williams, J.). In my view, the harmlessness of the error in this case is not sufficiently obvious or readily discernible from the record to warrant a *sua sponte* harmless-error determination.

The 2012 district court did not consider the implications of the 2008 district court's decision to sentence Smith based on a drug quantity range of 500 grams to 1.5 kilograms. The majority assumes that, even if the 2012 district court had considered the 2008 court's decision, the 2012 court would still have held Smith responsible for a disqualifying quantity of drugs. I am not so certain. The judge who granted Smith a sentence modification in 2008 was intimately familiar with

Smith's case, having presided over it for nine years and having issued two previous decisions concerning Smith's sentence. That judge and the Probation Office (which recommended the reduction) both concluded in 2008 that Smith's sentence should be modified on the basis of an offense level corresponding to 500 grams to 1.5 kilograms of crack. The United States Attorney's Office, in deciding not to oppose Smith's 2008 motion for a sentence reduction, evidently thought the same. The 2012 district court might have scrutinized the record to assess why all of those actors assumed that Smith should be held responsible only for a limited quantity of crack cocaine rather than for more than 8.4 kilograms. *Cf. United States v. Singleton*, 759 F.2d 176, 178 (D.C. Cir. 1985) (noting that under law-of-the-case doctrine, a subsequent court generally "refuse[s] to reopen what has been decided" in the same case, including "questions decided by necessary implication" (internal quotation marks omitted)).

The 2012 district court's failure to consider the implications of the 2008 court's decision is especially significant because the 2012 court's drug-quantity finding already rests on an uncertain foundation. In affirming the 2012 district court's attribution to Smith of over 8.4 kilograms of crack, the majority states that the "[t]he original sentencing court [in 1989] found that the conspiracy handled roughly 4 kilograms of cocaine base per month during Smith's five-plus months' participation." *Ante*, at 21. And the 2012 district court, the majority reasons, was "entitled to rely" on that figure. *Id.* at 22. If the original sentencing court had indeed made a four-kilograms-a-month finding, and if the court had further found that all of the crack distributed by the conspiracy during those months should be attributed to Smith, this might well be the sort of case in which a *sua sponte* harmless-error inquiry would be appropriate. *Cf. United States v. Stover*, 329 F.3d 859, 874 (D.C. Cir. 2003) (per

curiam) ("The District Court must make individualized findings linking each appellant's scope of participation in the conspiracy with the quantum of drugs attributed to him." (alterations and internal quotation marks omitted)). But the 1989 sentencing court did not make such a finding. Rather, the sentencing judge stated: "*I don't know* exactly how much crack was distributed during the period that Mr. Smith was a participant, but we have *heard* about 4 kilos a month . . ." (emphasis added). The judge then explained that, because four kilograms a month is "so much more" than 500 grams, "I find that [Smith] did distribute more than 500 grams of crack during the period when he was a member."

To be sure, the original sentencing court might have found Smith responsible for distributing more than 840 grams if it had been called upon to make such a determination. But it was not. The court *found* only that Smith distributed more than 500 grams, expressly declining to reach any conclusion concerning the amount of crack distributed by the conspiracy (and also making no finding about Smith's own responsibility for drugs distributed by the conspiracy). The 2012 district court therefore was mistaken when it said that the 1989 court had "estimated that the conspiracy handled roughly 4 kilograms a month." And the 2012 district court otherwise gave no explanation of the basis for its conclusion that the drug conspiracy handled more than 8.4 kilograms of crack while Smith was a member (or, if it did, why Smith should be held responsible for the full quantity).

In my view, none of the other portions of the record identified by the majority demonstrate Smith's responsibility for 840 grams of crack with sufficient clarity to justify a *sua sponte* harmless-error affirmance. While the 1989 sentencing court found "substantial evidence" that Smith played a managerial role in the drug enterprise, *see ante*, at 22, that

does not speak directly to the question of drug quantity. The trial testimony concerning Smith's role in the drug conspiracy, *see id.* at 22-23, likewise fails to establish Smith's responsibility for at least 840 grams of crack. One witness says she saw Smith counting eight or nine large ziplock bags containing an unidentified white substance. Another witness describes a time when her apartment was "like wall-to-wall cocaine," but she also suggests that Smith had already left the apartment by that time. A third witness says that Smith personally gave him $3,000 worth of crack, and a fourth witness says that Smith was present while another member of the drug enterprise counted $26,000 of cash, but neither witness links the dollar amount with a specific drug quantity. Our opinions in other cases describe roughly contemporaneous crack transactions in Washington, D.C., at prices well over $100 per gram, *e.g.*, *United States v. Brown*, 16 F.3d 423, 425 (D.C. Cir. 1994); *United States v. Beckham*, 968 F.2d 47, 53 (D.C. Cir. 1992), so even if Smith could be held responsible for $3,000 worth of crack (or $26,000 worth of crack), that would not necessarily demonstrate his responsibility for 840 grams of crack or more.

None of this is intended to suggest that, if the case were remanded, the district court would be *likely* to hold Smith responsible for less than 840 grams of crack. Indeed, it may well be that the district court would examine the entire record and prior course of proceedings—including the 2008 district court's decision—and decide to attribute to Smith more than (perhaps far more than) 840 grams. But I do not consider the matter sufficiently free from doubt to justify a *sua sponte* harmless-error determination. We ordinarily leave it to district courts in the first instance to scrutinize the record and make drug quantity findings. And we ordinarily would be reluctant to canvass the record ourselves to affirm a decision on harmless-error grounds when the government has made no

argument asking us to do so. Respectfully, I believe the ordinary course is the appropriate one here.